JOHN J. TOOHEY, JR., STATE COMMISSIONER OF LABOR, PROSECUTOR-APPELLANT, v. FRED GORMAN, PETITIONER-RESPONDENT, AND MINER-EDGAR CHEMICAL CORPORATION, DEFENDANT-RESPONDENT.

Argued February 6, 1940—Decided April 25, 1940.

For the appellant, *William J. Egan,* assistant attorney-general *(Stephen J. Lorenz,* of counsel).

For the respondent, Miner-Edgar Chemical Corporation, *Kalisch & Kalisch (Isidor Kalisch,* of counsel).

The opinion of the court was delivered by

HEHER, J. The injured employe suffered a vertical fracture of his right pivot hip bone by accident arising out of and in the course of his employment. Due to a pre-existing physical ailment known as Paget's disease, all efforts at bone union have been in vain; and the resultant disability is total in character and permanent in quality, for which the employer has made compensation for a period of 400 weeks, under section 11 (b) of the Workmen's Compensation act of 1911, as amended by chapter 135 of the laws of 1928. *Pamph. L.* 1911, *pp.* 134, 763; *Pamph. L.* 1928, *p.* 281; *R. S.* 1937, 34:15-12.

In the instant proceeding, the employe seeks "further weekly payments * * * during the period" of disability under the cited section of the Compensation act; and the ultimate question for decision is whether his conceded right to such additional compensation is enforceable against the employer or the fund created by chapter 81 of the laws of 1923, as amended by chapter 55 of the laws of 1936. *Pamph. L.* 1923, *p.* 162; *Pamph. L.* 1936, *p.* 145; *R. S.* 1937, 34:15-94, 34:15-95.

In a litigated proceeding in the Compensation Bureau, the employe was awarded compensation based upon a finding of disability to the extent of "seventy-five per cent. of total and permanent." The judgment was affirmed in the Essex Common Pleas and in the Supreme Court. *Gorman* v. *Miner-Edgar Chemical Corp.,* 9 *N. J. Mis. R.* 180. In a subsequent proceeding, the employer admitted total and permanent incapacity and consented to "additional compensation to the extent of twenty-five per cent., amounting to twenty-five weeks." A determination was entered accordingly. Thereafter, the deputy commissioner, on the employer's motion,

made an order modifying that determination so as to read: "I, therefore, find and determine that the disability originally found as seventy-five per cent. of permanent and total disability has now developed into one of permanent and total disability."

The first insistence is that "the two determinations and orders, consented to by the employer, as to total and permanent disability of the petitioner, is [*sic*] a determination of this controversy on its merits." More specifically, it is maintained that "the 1% Fund Act covers a portion of 400 weeks," and "therefore, unless 'portion' of the 400 weeks is adjudicated payable from the fund no benefits can be derived therefrom because there is no portion of the period of 400 weeks to which the fund can 'attach;'" that "payments for total permanent disability beyond 400 weeks differ from payments as compensation under the schedule, and essentially are the consequence of total permanent compensation;" that "there must be a finding of the 'portion of the period' of 400 weeks attributable to the fund;" that "the employer had that opportunity to apportion disabilities if any in June, 1936, but did not take it and assumed and consented to total liability instead;" and that under the Compensation Act, *supra,* "payments beyond 400 weeks are automatically the liability of the respondent paying the balance of 400 weeks." The point is not well made.

The determination of the Compensation Bureau in the second proceeding, based as it was upon an accord between the parties and not on the merits, is not *res judicata* in respect of the *quantum* of the employer's additional liability under the Compensation act, *supra,* therein found. *Vide R. S.* 1937, 34:15-22. It was not an adversary proceeding in which that issue was litigated and determined on the merits; and it is therefore lacking in the element of finality. "The policy of the law is not served by reduced payments to one entitled to its benefits; nor is it advanced by providing compensation to one not within the statutory class. The approval by the bureau of a compromise agreement made with one not so entitled is nugatory; such action is *coram non judice.*"

*P. Bronstein & Co., Inc., v. Hoffman,* 117 *N. J. L.* 500, 505. See, also, *Streng's Piece Dye Works* v. *Galasso,* 118 *Id.* 257.

Nor does the fact that the employer "treated the second petition as for compensation for increased disability" preclude it "from questioning its sufficiency." There is revealed no ground upon which the doctrine of estoppel *in pais* can be invoked against the employer.

The evident design of section 34:15-95 of the Revision, *supra,* was to relieve the employer of the obligation to render compensation for the portion of the period of disability for which he was "not legally responsible due" to the permanent and partial disability suffered by the employe at the time the wholly disabling compensable injury was sustained. *Richardson* v. *Essex National Trunk, &c., Co., Inc.,* 119 *N. J. L.* 47. True, the employer's liability, in the event of total and permanent incapacity, is not limited to compensation for a period of 400 weeks. Such payments shall then "cease unless the employe shall have submitted to such physical or educational rehabilitation as may have been ordered by the rehabilitation commission, and can show that because of such disability it is impossible for him to obtain wages or earnings equal to those earned at the time of the accident," in which event "further weekly payments shall be made during the period of such disability, the amount thereof to be the previous weekly compensation payment diminished by that portion thereof that the wage, or earnings, he is then able to earn, bears to the wages received at the time of the accident." *Pamph. L.* 1928, *p.* 281; *R. S.* 1937, 34:15-12.

But, where the employe's pre-existing disability has been rendered total in character and permanent in quality by a compensable industrial accident, the employer's obligation is measured in terms of the fixed compensation period rather than the *quantum* of the weekly payments. There is no provision for the apportionment of the compensation "period" subsequent to the 400 weeks. The compensation payable from the "one per cent. fund" thus created "shall cover that *portion* of the *period"* for which the employer is not "legally responsible due to" the pre-existing incapacity. In the event

the disability in terms of deprivation or reduction of earning power extends beyond the period of 400 weeks, the duty of making reparative compensation continues "during the period of such disability;" it is not otherwise limited as to time. Thus there can be no apportionment of this continuing liability between the employer and the fund under the only standard laid down in the statute, *i. e.,* the *portion* of the *period* for which the employer is not "legally responsible due to" the pre-existing incapacity. That does not seem to have been within legislative contemplation. It would seem that the legislature proceeded on the hypothesis that, ordinarily, where the industrial accident was not the sole causative agent of the total and permanent disability suffered by the injured employe, but the pre-existing incapacity was a substantial contributing factor, the continuing disability beyond the 400 weeks is not in any degree justly chargeable to the employer. But however this may be, it is indisputable here that the continuing incapacity is in the main attributable to the pre-existing disease, and is therefore not imputable to the employer under the statute. That is the direct consequence of the failure of union of the fractured bone incident to the incurable disease.

It suffices to add that, notwithstanding the contrary contention, there was a finding in the Common Pleas, affirmed by the Supreme Court, of a twenty-five per cent. pre-existing disability flowing from this disease; and that, since there was evidence to sustain it, this factual finding is conclusive here. As stated, the doctrine of *res judicata* is not invocable on this issue.

Judgment affirmed.

*For affirmance*—THE CHIEF JUSTICE, CASE, DONGES, HEHER, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 11.

*For reversal*—None.