MAX BALASH, PETITIONER-RESPONDENT, v. HARRY C. HARPER, COMMISSIONER OF LABOR AND INDUSTRY, AND TRUSTEE OF THE ONE PER CENT FUND, RESPONDENT-APPELLANT.

Argued November 21, 1949—Decided January 9, 1950.

*Mr. Isadore Rabinowitz* argued the cause for the petitioner.

*Miss Grace J. Ford,* Deputy Assistant Attorney General, argued the cause for the appellant; *Mr. Theodore D. Parsons,* Attorney General, on the brief.

The opinion of the court was delivered by

OLIPHANT, J.   This is an appeal from a final judgment of the Passaic County Court in favor of the petitioner-respondent, entered on June 8, 1949, which reversed and set aside an order signed by the Commissioner of Labor dated March 29, 1949, dismissing the application of the petitioner-respondent for benefits from the "One Per Cent Fund." *R. S.* 34:15–95.   The appeal was taken to the Appellate Division

of the Superior Court and, while pending there, was certified
here on our own motion.

In 1940 the respondent suffered a compensable right stran-
gulated inguinal hernia while employed by the Passaic Gera
Mills, which condition was surgically corrected. In February,
1942, the respondent suffered a non-compensable left inguinal
hernia which was not operated on and for which he wore a
truss. On August 31, 1942, the respondent, while still em-
ployed by Passaic Gera Mills, sustained a coronary occlusion
and subsequently was awarded 40% of total permanent disa-
bility in the Workmen's Compensation Bureau. Upon the
termination of his compensation payments the respondent filed
an application for benefits under the "One Per Cent Fund"
which was denied and his petition was dismissed.

The respondent contends that he became and was totally
and permanently disabled on August 31, 1942, following
the compensable heart injury and that the total permanent
disability was and is the result of the combination of the
heart injury and pre-existing condition so as to entitle him
to benefits under the act.

It is admitted that the respondent sustained total disability
after having been previously permanently and partially dis-
abled by a compensable accident and that such a condition
existed at the time of his application for benefits.

The testimony in the case indicates that prior to the heart
attack in August, 1942, the respondent was afflicted with an
arterio-sclerosis, though this would not, standing alone, inter-
fere with his being employed as a working unit and carrying
on his duties. However, there is testimony that the left in-
guinal hernia and the heart condition must be considered
as overlapping and that the combination of the two resulted
in the total disability. This was so because the added strain
from the inoperable hernia would throw an additional strain
on anything the man attempted to do and this added strain
and undue burden imposed upon the other factors, namely
the arterio-sclerosis and the after effects of the coronary occlu-
sion, would be one he could not physically cope with, and
the hernia plus the heart condition were the sole two factors

which caused the total disability. The testimony is that the heart condition and the arterial disease added considerably to the risk of the operation and in the considered judgment of the treating physician would not warrant his operating, and in his opinion an operation for the left inguinal hernia was not feasible in 1942 nor is it now despite the fact there has been no change in the general arterial condition.

The appellant contends that the respondent does not come within the statutory provisions.

R. S. 34:15–95 provides *inter alia:*

"The sums collected under section 34:15–94 of this Title shall constitute a fund out of which a sum shall be set aside each year by the Commissioner of Labor from which compensation payments in accordance with the provisions of paragraph (b) of Section 34:15–12 of this Title shall be made to persons *totally disabled*, as a result of experiencing a *subsequent permanent injury* under conditions entitling such persons to compensation therefor, when such persons had *previously* been permanently and partially disabled from *some other cause; * * *."

It further provides:

"*provided further*, however, that no person shall be eligible to receive payments from such fund:
(a) If the disability resulting from the injury caused by his last compensable accident in itself and irrespective of any previous condition or disability constitutes total and permanent disability within the meaning of this Title.
(b) If permanent total disability results from the aggravation, activation or acceleration, by the last compensable injury, of a pre-existing noncompensable disease or condition.
(c) If the disease or condition existing prior to the last compensable accident is not aggravated or accelerated but is in itself progressive and by reason of such progression subsequent to the last compensable accident renders him totally disabled within the meaning of this Title.
(d) If a person who is rendered permanently partially disabled by the last compensable injury subsequently becomes permanently totally disabled by reason of progressive physical deterioration or pre-existing condition or disease."

The unoperative left inguinal hernia and the arterio-sclerosis of the respondent clearly come within the meaning of the words "some other cause" as used in the first sentence of

*R. S.* 34:15–95. Subdivision (a) and (b) obviously do not apply to the situation here presented because (1) the coronary occlusion by itself did not constitute the total disability, (2) the proofs are that there has been no aggravation, activation or acceleration of either the arterio-sclerosis or the left inguinal hernia.

The controversy turns upon the applicability of the limitations of subdivisions (c) and (d). Neither of these bars the right of the respondent to benefits because of the mere pre-existence of a progressive disease. Subdivision (c) only defeats a claim if the disease is progressive and the progression of the disease of and by itself subsequent to the last compensable accident (which in this case would be August 22, 1942) renders the applicant totally disabled. Subdivision (d) only defeats a claim if the applicant becomes totally disabled subsequent to the last accident as the result of the progressive physical deterioration or pre-existing condition or disease. These two sections apply to situations only where the progression of the condition or disease is the normal incident of the disease or condition.

After carefully considering all the testimony we have come to the conclusion that the permanent disability in this case did not result from a progression of the arterio-sclerosis but it was due solely to two factors: the injury to the heart caused by the coronary occlusion combined with the inoperable left inguinal hernia. The testimony of Dr. Cohen for the respondent is much more persuasive than that of Dr. Schultz for the appellant, who, while he testified that 25% of the disability was the result of the general physical condition that existed prior to the last compensable accident and 40% resulted from the compensable accident itself and the remaining 30% to 35% was due to the subsequent heart and vascular changes, nevertheless admitted under cross-examination that without the functional disability he could not estimate precisely the percentage that was due to the arterio-sclerosis.

In answer to a question that since there was no functional disability from the arterio-sclerosis how could he give such

an estimate, he answered "Well they asked for it, so I have to give them an estimate." And then later he flatly testified it was the coronary condition superimposed upon the left inguinal hernia that were the two real factors in the case from which the functional disability flowed. It is to be noted here that Dr. Cohen was the treating physician having had the respondent under his care for a period of several years whereas Dr. Schultz merely examined respondent for the purpose of testifying in this case.

The intent of the statute is to insure the employee full compensation where a compensable disability succeeds but has no causative connection with the results of a prior disability, the combination of the two leaving the employee permanently and totally disabled. The intention is to relieve the employer of the undue burden of a prior disability, with which or its results, the disability arising in his employ has no causative connection.

The test of the applicability of the "One Per Cent Fund" is (a) that an employee has become totally and permanently disabled when a compensable disability is superimposed upon a prior disability, whether compensable or not, and (b) that the prior disability is one for whose results the subsequent disability has not been a competent producing cause as by aggravation, activation or acceleration. If the last compensable accident produces an aggravation, activation or acceleration then any progression in the pre-existing condition is attributable and is part of the last compensable accident. *Cf. Richardson v. Essex National Trunk & Bag Co., 119 N. J. L.* 47 *(E. & A.* 1937) ; *Voessler v. Palm Fechteler & Co.,* 120 *N. J. L.* 553 *(Sup. Ct.* 1938) ; *In re Glennon,* 18 *N. J. Misc.* 196 *(Essex Pleas* 1940).

The respondent has met this test and his proofs show a compensable disability superimposed upon a prior disability, which was not compensable, which resulted in the admitted total and permanent disability. There is no proof in this case that the coronary occlusion, the compensable disability, aggravated the prior existing condition.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—Justice HEHER—1.