59 N.J. Super. 478 (1960)
158 A.2d 70
KATHERINE MAYTI, PETITIONER-APPELLANT,
v.
RAYMOND E. MALE, COMMISSIONER OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, AND TRUSTEE OF THE ONE PER CENT FUND, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Union County Court, Law Division  Civil.
Decided February 5, 1960.
*480 Mr. Otto C. Staubach for the petitioner-appellant (Messrs. Weiner, Weiner & Glennon, attorneys; Mr. Lester Weiner on the brief).
Miss Grace J. Ford for the respondent-respondent (Mr. David D. Furman, Attorney General).
FULOP, J.C.C.
On October 3, 1952 petitioner, a woman then 59 years of age, suffered a fall while in the employ of Singer Manufacturing Company. She petitioned for workmen's compensation. An award was entered on December 5, 1955, for both temporary and permanent disability. The Deputy Director found as follows:
"As to the question of permanent disability, while there is no doubt in my mind the petitioner presents an overall disability in excess of my evaluation of the disability chargeable to the respondent, the conditions from which she suffered, the underlying osteoarthritic changes in her system, more particularly the progression in the right hip, plus the arthritic changes in the lumbar area and right knee, be that as it may, because this underlying condition has become aggravated, I will award the petitioner for orthopedic and neurological, a disability of 15 per cent of total, 82 1/2 weeks at $30.00 a week, $2,475.00."
*481 The foregoing finding followed testimony by Dr. Cardinale for petitioner and Dr. Keats for respondent. Dr. Cardinale testified that she was 40% disabled; that 20% of the disability preexisted and 20% was attributable to the accident. Dr. Keats estimated total disability at 15%, one-half preexisting, and one half chargeable to the accident. The Deputy Director made no finding as to total disability, but found 15% of total due to the accident.
Thereafter petitioner petitioned for compensation for increased disability from her employer. This matter was heard on July 1, 1957. Dr. Keats again testified for respondent. He said that petitioner was then 100% totally disabled. He attributed 50% to the right hip, lumbar area and right knee which were involved in the accident, and 50% to a calcified mass in the pelvis, probably representing calcified fibroid tumor, and osteoarthritis of the dorsal vertebrae. Dr. Cardinale testified again for the petitioner. He attributed two-thirds of total disability to the right hip, lumbar spine and right knee, and one-third to the thoracic spine, left side of the pelvis and calcification in the abdominal cavity. The Deputy Director determined that petitioner was then 100% totally disabled, that 50% was due to the accident and 50% to preexisting disability not causally related to the accident. He awarded additional compensation for 35% of total permanent disability.
Petitioner now seeks to recover compensation from the One Per Cent Fund for the 50% of total disability attributed to petitioner's preexisting condition and not charged to the employer. Petitioner alleges that the finding in the 1957 case against the Singer Manufacturing Company is conclusive that the portion of disability for which compensation was not allowed was due to preexisting conditions, the accident rendering petitioner totally disabled when added to the prior condition.
This claim was heard in the Division on January 21, 1958. The medical testimony added nothing to the evidence submitted at prior hearings. The petition was dismissed on *482 the ground that total disability resulted from the aggravation, activation or acceleration of a preexisting noncompensable disease or condition by the last compensable injury for which compensation from the Fund is barred under N.J.S.A. 34:15-95(b).
N.J.S.A. 34:15-95 provides, in so far as here material, as follows:
"* * * compensation payments * * * shall be made to persons totally disabled, as a result of experiencing a subsequent permanent injury under conditions entitling such persons to compensation therefor, when such persons had previously been permanently and partially disabled from some other cause; * * * provided * * * however, that no person shall be eligible to receive payments from such fund:
(a) If the disability resulting from the injury caused by his last compensable accident in itself and irrespective of any previous condition or disability constitutes total and permanent disability within the meaning of this Title.
(b) If permanent total disability results from the aggravation, activation or acceleration, by the last compensable injury, of a pre-existing noncompensable disease or condition.
(c) If the disease or condition existing prior to the last compensable accident is not aggravated or accelerated but is in itself progressive and by reason of such progression subsequent to the last compensable accident renders him totally disabled within the meaning of this Title.
(d) If a person who is rendered permanently partially disabled by the last compensable injury subsequently becomes permanently totally disabled by reason of progressive physical deterioration or pre-existing condition or disease.
Nothing in the provisions of said paragraphs a, b, c and d, however, shall be construed to deny the benefits provided by this section to any person who has been previously disabled by reason of total loss of, or total and permanent loss of use of, a hand or arm or foot or leg or eye, when the total disability is due to the total loss of, or total and permanent loss of use of, two or more of said major members of the body, or to any person who in successive accidents has suffered compensable injuries, each of which, severally, causes permanent partial disability, but which in conjunction result in permanent total disability."
The Attorney General makes two points in opposition to the claim, as follows:
(1) The total disability is the result of the aggravation of a preexisting noncompensable condition by a compensable *483 traumatic incident, and the claim is barred by subsection (b) of the statute.
(2) The petitioner was not totally disabled on the date of the accident, October 3, 1952, but became so thereafter by the progression of her preexisting diseases and the aggravation resulting from the accident, and is therefore not covered by the Fund.
Subsection (b) has no application. It applies only when the total permanent disability results solely from the aggravation of the prior disease so that the employer is liable for the whole. Richardson v. Essex National Trunk & Bag Co., 119 N.J.L. 47 (E. & A. 1937).
The Division adjudged in 1957 that the total disability was only 50% due to the aggravated arthritis, and that 50% was due to the coexistence of other preexisting conditions. This determination is binding on the Commissioner. Walker v. Albright, 119 N.J.L. 285 (Sup. Ct. 1938). This court is not bound by the contrary view of the Essex County Court of Common Pleas in Application of Glennon, 18 N.J. Misc. 196 (C.P. 1940). See also In re El, 18 N.J. Misc. 348 (C.P. 1940), reviewed as to other matters at El v. Toohey, 125 N.J.L. 510 (E. & A. 1940).
The second argument is grounded upon the provision of the statute for compensation to persons experiencing "a subsequent permanent" compensable "injury * * * when such persons had previously been permanently and partially disabled from some other cause." It also appears to be an oblique reliance on subsection (c) or (d) of the statute, although these are not cited. The Deputy Director relied solely on subsection (b).
Restated, it is contended that since petitioner's prior osteoarthritis and tumor were latent and had not manifested themselves so as to disable her to any known extent before the accident occurred, and the combination of the injury resulting from the accident plus the prior condition did not result in total disability until perhaps three years after the *484 accident, therefore the injury was not subsequent to the condition and petitioner is not within the statutory benefit provisions.
It is admitted that petitioner is totally and permanently disabled and that she was so at the time of the last award against her employer.
The purpose of the statute is to provide compensation to employees who become totally disabled from two distinct, partially disabling causes, one of which is compensable by the employer and the other is not so compensable. It is designed to avoid charging the employer in whose service an accident occurs with the total disability when the accidental injury, without the distinct prior condition, would not have rendered the employee totally disabled. By relieving the employer of this burden, the opportunities for employment of the partially disabled are enlarged.
The statute does not go all the way. When the disability or the aggravation of a preexisting disease or condition caused by the compensable accidental injury in and of itself renders the employee totally disabled, then the employer must pay compensation for total disability. If the total disability results from the normal progression of a preexisting disease or condition after the compensable accident but without reference to it, the Fund is not available. So also if the permanent disability results from progressive physical deterioration or preexisting condition or disease after the partial disability due to accidental injury, the Fund is not available. The last two exceptions are set out in subsections (c) and (d) of the act and were construed in Balash v. Harper, 3 N.J. 437 (1950) to apply "only where the progression of the condition or disease is the normal incident of the disease or condition." But the mere preexistence of a progressive disease does not bar resort to the Fund, if the total disability was effected by the concurrence of the last injury and the effects of the progressive condition or disease.
Osteoarthritis is progressive. But the evidence indicates that petitioner did not become totally disabled in the *485 normal progression of the disease. The acceleration of the arthritis on the right side and lower spine, added to the unaccelerated progression of arthritis in the upper spine and left pelvis and the calcified mass in the abdominal cavity, simultaneously caused total disability. The calcified mass certainly is not shown to have any connection with the accidental injury, predated it, and contributed simultaneously with the injury to render the petitioner totally disabled.
The Attorney-General quotes from the opinion of Mr. Justice Heher in Toohey v. Gorman, 125 N.J.L. 41, 44 (E. & A. 1940) as follows:
"The evident design of section 34:15-95 of the Revision, supra was to relieve the employer of the obligation to render compensation for the portion of the period of disability for which he was `not legally responsible due' to the permanent and partial disability suffered by the employee at the time (underscoring supplied) the wholly disabling compensable injury was sustained." (Italics supplied.)
From this statement based on words which are no longer in the statute, it is argued that the total disability must occur on the day of the accident. This argument treats injury and accident as synonymous. They are not. The Workmen's Compensation Act provides for "compensation for personal injuries * * * by accident." R.S. 34:15-7. The compensation is for the injuries which may develop as a result of the accident. See In re El, supra; Panchak v. Simmons Co., 15 N.J. 13 (1954); 99 C.J.S. Workmen's Compensation § 154, p. 527, note 14.
In Panchak v. Simmons Co., supra, the Supreme Court was dealing with the construction of the words "occurrence of the injury" as used in R.S. 34:15-17 which requires notice to the employer within 30 days. The court construed these words to mean manifestation of injury as distinguished from the occurrence of the accident when the two do not concur. The case dealt with the beginning point of the "injury." Here we are concerned with the terminal point of the injury.
*486 In Ruffin v. Albright, 121 N.J.L. 424 (Sup. Ct. 1938), affirmed 124 N.J.L. 449 (E. & A. 1940), it was held that a petition for benefits from the Fund must be filed within the period limited for filing claims for compensation "or for increased disability." By implication it follows that increased disability resulting from the accident after an award has a bearing upon the availability of the One Per Cent Fund.
The contention that the total disability must occur on the day of the accident seems to have no basis in the language or the theory of the statute. In this connection "injury" does not mean "accident" but means the total and final effects of the accident.
Petitioner is entitled to an award of 50% of total permanent disability. Judgment will be entered for the payment out of the Fund of $30 per week for 225 weeks, the first payment to commence after the last payment by the employer. Counsel fees and costs may not be allowed against the Fund. Application may be made for costs actually incurred and a counsel fee to be paid by petitioner to her own attorney.