70 N.J. Super. 234 (1961)
175 A.2d 450
BENJAMIN SCHULMAN, PETITIONER-APPELLANT,
v.
RAYMOND F. MALE, COMMISSIONER OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, AND TRUSTEE OF THE ONE PER CENT FUND, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1961.
Decided October 31, 1961.
*236 Before Judges KILKENNY, HERBERT and COLLESTER.
Mr. Jack Mandell argued the cause for the appellant (Messrs. Roskein, Kronisch, Pelzenberg & Mandell, attorneys).
Mr. Theodore I. Botter argued the cause for respondent (Mr. David D. Furman, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
This is a workmen's compensation case wherein the petitioner, Benjamin Schulman, sought total disability benefits from the One Per Cent Fund (N.J.S.A. 34:15-95). The then Acting Commissioner of Labor and Industry dismissed plaintiff's petition on the ground that the claim was barred by N.J.S.A. 34:15-95(c) and (d). The dismissal was affirmed by the Essex County Court, upon a finding that the factual situation precluded recovery under N.J.S.A. 34:15-95(c). Petitioner appeals therefrom.
Though petitioner, a former truck driver, is now gainfully employed doing stockroom work, handling and receiving *237 shipping, and earning $70 per week, it is conceded that he is now totally and permanently disabled within the meaning of our Workmen's Compensation Law.
While engaged in his previous occupation, petitioner sustained two compensable accidents. The first occurred on August 11, 1956, resulting in an injury or strain of the lower right abdominal wall and inguinal region, for which the petitioner was awarded 2 1/2% of total permanent disability. On December 2, 1957 petitioner was injured while jumping onto the tailboard of a truck. The injury was diagnosed as a strain of the right thigh muscles, and petitioner was awarded therefor 15% disability of the right leg.
Prior to these compensable accidents, petitioner had been suffering from a number of ailments. These included hemorrhoids and a hemorrhoidectomy, surgical repair of an anal fissure, weakness of the left eye, lues, nervousness and excitability. The disabilities, if any, produced by these conditions went undefined. Also, during military service, he had sustained a bullet wound in his right leg and a shrapnel wound involving the right shoulder. For the latter he has been receiving a veteran's pension of $33 per month, based on a disability of 20% of the right shoulder. No veteran's compensation has been awarded for the leg injury.
Petitioner also had a brain tumor, the onset of which probably antedated his last compensable accident on December 2, 1957, though its manifestation and disabling effect, as hereinafter noted, followed that happening. It is conceded that the formation of this brain tumor was not caused by either compensable accident; and there is no contention that its progress or development was aggravated, activated, or accelerated thereby.
Sometime after the December 2, 1957 compensable accident, petitioner started to limp. In order to determine the cause, he entered a Veterans Administration Hospital on February 17, 1958. There, he complained of limping in the right leg "for some 2 1/2 months," a numbness in part of the right foot for a year, headaches about five times per *238 week, numbness of the right leg, and a weakness of the muscles of the leg preventing him from walking on his toes and affecting his ability to put his foot down without slapping it on the floor. On March 27, 1958 he was discharged with a diagnosis of "multiple sclerosis early."
Disturbed by that diagnosis, petitioner went thereafter to Columbia-Presbyterian Medical Center where certain findings indicated the need of a "work up" for a possible brain tumor. He was so advised but failed to keep an appointment for his admission for that purpose. Later, on October 8, 1958, he did enter the hospital and two days later surgery was performed for the removal of a brain tumor. Petitioner's condition has slowly deteriorated to the point where he now finds it extremely difficult to walk, cannot run at all, and at times is unable to co-ordinate his thoughts with his speech. The petitioner is presently totally and permanently disabled.
After reviewing the record, the County Court found that "the onset of the brain tumor antedated the final compensable accident * * * and that it was the progress of the tumor subsequent to the accident that produced total and permanent disability." The court also noted that the "greatest factor in the disability picture is the orthopedic and neurological aftermath of the development and surgical removal of a brain tumor." On this basis, it concluded that the legal situation created by the facts and circumstances of the case clearly brought it within the exclusionary provisions of N.J.S.A. 34:15-95(c).
Dr. Vincent J. Riggs, a neurologist and psychiatrist, testifying for petitioner, stated that he examined petitioner on February 13, 1959, and found a paralysis due to a brain tumor. On June 15, 1960 he examined petitioner again and found him suffering from a right parietal hemiplegia with a disability of 100 per cent of total. He found that petitioner suffered from conditions orthopedic in nature, which were separate factors independent of the hemiplegia. In his opinion, the petitioner was totally disabled from all *239 factors, but the effects of the brain tumor were the major cause of his disability.
Dr. Phillip Willner, an orthopod, petitioner's other medical witness, examined petitioner in December of 1959 and felt that because of the hemiplegia, petitioner had an orthopedic disability of 50 per cent of total; and that the damage to the brain should be evaluated by a neurologist.
Dr. Livingston S. Hinkley, a medical examiner employed by the Department of Labor and Industry as a neuro-psychiatrist, testified he examined petitioner on September 26, 1959, and found him totally disabled for his vocation. He attributed the condition of the right leg to the central nervous system disease and that the gunshot wound was unrelated. He felt that there was an orthopedic component, but he was not qualified to state the extent of such disability. He conceded that the brain tumor from which petitioner had suffered did take time to form, but emphasized that this is a progressive condition.
Dr. Samuel Lemkin, a medical examiner employed by the Department of Labor in the orthopedic field, testified that on October 22, 1959, he examined this petitioner, and in his opinion the petitioner was totally disabled and was suffering from the sequelae of a post-operative excision of a benign meningioma of the brain in the occipital region, shrapnel wounds of the right shoulder, gunshot wound of the right thigh, and latent lues. He estimated 50 per cent of total disability due to the right parietal hemiplegia, but that there was massive destruction of the brain due to the meningioma. He stated that if petitioner's disability were computed from an orthopedic and neurological point of view, it would total more than 100 per cent.
Thus, there was substantial evidence that petitioner's ultimate total disability was solely the result of pre-existing progressive orthopedic-neurological disease and brain damage. The probabilities support the conclusion that this petitioner would be identically incapacitated regardless of whether he suffered the right thigh muscle strain. Petitioner did not *240 prove that this total disability was "as a result" of that relatively inconsequential incident. As the County Court properly concluded, plaintiff's total disability was the result of the "orthopedic and neurological aftermath of the development and surgical removal of a brain tumor."
N.J.S.A. 34:15-95 provides:
"* * * compensation payments * * * shall be made to persons totally disabled, as a result of experiencing a subsequent permanent injury under conditions entitling such persons to compensation therefor, when such persons had previously been permanently and partially disabled from some other cause; * * *." (Emphasis supplied)
Petitioner argues that the above provision entitles him to recover from the One Per Cent Fund for his total disability upon his showing (1) some pre-existing permanent partial disability, whether compensable or not; (2) a compensable partial permanent injury superimposed thereon; and (3) as a result of the compensable injury he became totally and permanently disabled. Subject to the statutory exclusions, N.J.S.A. 34:15-95(a), (b), (c), and (d), that is true. But what do we find in this case? True, petitioner is totally disabled. He did have (1) pre-existing partial permanent disability; and (2) a compensable partial permanent injury  the muscle strain of his right thigh  superimposed on his previous disability. But the evidence does not support a finding of factor (3), that the total disability was "as a result" of the muscle strain. The fact that total disability followed the muscle strain chronologically does not necessarily mean that it was "as a result" thereof. To hold otherwise would be to adopt the false logic of "Post hoc, ergo propter hoc." Petitioner's right thigh muscle strain did not, when superimposed upon his pre-existing disabilities, produce as a result thereof total disability any more than if the industrial accident had caused a permanent loss of the tip of the little finger on his left hand.
The One Per Cent Fund is not "an insurance scheme or an old age pension fund." Ruffin v. Albright, *241 121 N.J.L. 424 (Sup. Ct. 1938). "It is designed to avoid charging the employer in whose service an accident occurs with the total disability when the accidental injury, without the distinct prior condition, would not have rendered the employee totally disabled. By relieving the employer of this burden, the opportunities for employment of the partially disabled are enlarged." Mayti v. Male, 59 N.J. Super. 478, 484 (Cty. Ct. 1960). If there is total disability and the facts do not satisfy the requirements of N.J.S.A. 34:15-95, either the employer is responsible or no one is responsible, as where the end result is due to advancing age. In re Glennon, 18 N.J. Misc. 196, 197, 12 A.2d 360 (C.P. 1940).
Thus, even without reference to the exclusions set forth in N.J.S.A. 34:15-95, it seems clear that petitioner failed to establish by the preponderance of the probabilities any right of recourse against the One Per Cent Fund under the main provision of this statute.
The exclusions from recourse to the Fund under subsections (a) and (b) of N.J.S.A. 34:15-95 need not be adverted to because they have no relevancy here. Those subsections involve situations where the employer, rather than the Fund, is made liable to pay the entire compensation for the employee's total disability. Under (a), the employee's "last compensable accident in itself and irrespective of any previous condition or disability" produced total disability. Under (b), if total disability "results from the aggravation, activation or acceleration, by the last compensable injury, of a pre-existing noncompensable disease or condition," the Fund is not responsible. See Wexler v. Lambrecht Foods, 64 N.J. Super. 489 (App. Div. 1960), and Davenport v. Alvord Hotel, 21 N.J. Super. 493, 496 (Cty. Ct. 1951), for illustrations of the applicability of subsections (a) and (b).
N.J.S.A. 34:15-95 further provides that "no person shall be eligible to receive payments from such fund:
*242 "(c) If the disease or condition existing prior to the last compensable accident is not aggravated or accelerated but is in itself progressive and by reason of such progression subsequent to the last compensable accident renders him totally disabled within the meaning of this Title.
(d) If a person who is rendered permanently partially disabled by the last compensable injury subsequently becomes permanently totally disabled by reason of progressive physical deterioration or pre-existing condition or disease."
As stated in Ratsch v. Holderman, 31 N.J. 458 (Sup. Ct. 1960), at page 475, in explaining the difference between subsections (c) and (d):
"Subsections (c) and (d) of N.J.S.A. 34:15-95 encompass situations where total permanent disability is not manifested until some time after the injury
Subsection (c) provides that if the prior disability is in itself progressive and `by reason of such progression subsequent to the last compensable accident' (emphasis supplied) renders an employee totally disabled he cannot recover from the fund. * * *
Subsection (d) is simply the converse of subsection (c); the latter providing for instances where the progression is that of the prior disability and the former providing instances where the last compensable injury is progressive."
On that basic difference, petitioner's situation, as the County Court properly concluded, comes within the purview of subsection (c), rather than (d).
In Ratsch v. Holderman, supra, recovery against the Fund was denied because the majority of the court found that claimant's permanent disability was a result of a bilateral or saddle thrombophlebitis in the lower extremities, which "originated after the accident" and was not related to it. (31 N.J., at p. 461.) Prior to the accident in question, Ratsch was partially disabled by reason of both another accident and some unrelated conditions. Justice Burling dissented because he felt that there was a causal relationship between the last compensable accident and the thrombophlebitis. In doing so, he noted that N.J.S.A. 34:15-95 does not require that the total disability occur immediately upon the happening of the last compensable accident, if a causal relationship can be demonstrated. It is true that recourse *243 to the One Per Cent Fund may not be denied merely because part of the total disability is attributable to a condition which appeared subsequent to the last compensable accident suffered by petitioner. In re El, 18 N.J. Misc. 348, 349, 13 A.2d 561 (C.P. 1940), modified on other grounds, 125 N.J.L. 150 (Sup. Ct. 1940), affirmed per curiam 125 N.J.L. 510 (E. & A. 1941). However, where the pre-existing progressive conditions independently produced total disability, as in this case, recovery from the Fund is precluded.
Petitioner relies upon Mayti v. Male, supra, wherein the employee in 1952 suffered a compensable accident in a fall, by which aggravation and acceleration of previously existing arthritis on the employee's right side and lower spine caused a 50% of total permanent disability. The employee also had, prior to this compensable accident, a further disabling progressive arthritic condition in her upper spine and left pelvis, which was not accelerated by the fall. Besides this, there was in the employee a calcified abdominal mass which had no connection with the injury and predated it. Notwithstanding this combination, total disability did not result immediately upon the happening of the 1952 compensable accident. It wasn't until three years thereafter that the progression of the pre-existing arthritis in a different part of the employee's body, unaccelerated by the accident, but in combination with the disability produced thereby, rendered the employee totally disabled. Recourse to the One Per Cent Fund was allowed to the extent of 50% of the total disability, the employer being chargeable with the other 50%.
However, Mayti v. Male made these distinctions: (59 N.J. Super., at p. 484)
"If the total disability results from the normal progression of a pre-existing disease or condition after the compensable accident but without reference to it, the Fund is not available. So also if the permanent disability results from progressive physical deterioration or pre-existing condition or disease after the partial disability due to accidental injury, the Fund is not available. The last two exceptions are set out in subsections (c) and (d) of the act (N.J.S.A. 34:15-95) and were construed in Balash v. Harper, 3 N.J. 437 *244 (1950), to apply `only where the progression of the condition or disease is the normal incident of the disease or condition.' But the mere pre-existence of a progressive disease does not bar resort to the Fund, if the total disability was effected by the concurrence of the last injury and the effects of the progressive condition or disease." (Emphasis supplied)
In Mayti v. Male, the court made this significant finding:
"Osteoarthritis is progressive. But the evidence indicates that petitioner did not become totally disabled in the normal progression of the disease."
Balash v. Harper, supra, held that the law was intended to insure an employee full compensation, where a compensable disability succeeds but has no causative connection with the results of a prior disability, the combination of the two leaving the employee permanently and totally disabled. In Balash v. Harper the workman sustained compensable disability from a coronary occlusion. This was superimposed upon a prior disability from a non-compensable inguinal hernia. The two disabilities resulted in total permanent disability. There was no proof that the coronary occlusion aggravated the inguinal hernia. It was held that the workman was entitled under N.J.S.A. 34:15-95 to compensation from the One Per Cent Fund.
The appellant places great stress upon a few words which appear in one sentence of the opinion in Balash v. Harper, supra. The sentence reads (3 N.J., at p. 441):
"Subdivision (c) only defeats a claim if the disease is progressive and the progression of the disease of and by itself subsequent to the last compensable accident * * * renders the applicant totally disabled." (Emphasis ours)
We do not subscribe to the view, for which the appellant so strenuously argues, that the words "of and by itself" make N.J.S.A. 34:15-95(c) applicable only to a case in which the progression of the pre-existing disease or condition is the sole and exclusive cause of permanent and total disability. *245 We think these words as they appear in the quoted sentence were intended to exclude from the effect of paragraph (c) aggravation or acceleration of the pre-existing disease or condition by the last compensable accident. In other words, the sentence on which the appellant relies has the same meaning as though it were written:
"Subdivision (c) only defeats a claim if the disease is progressive and progression of the disease, without aggravation or acceleration resulting from the last compensable accident, subsequent to that accident renders the applicant totally disabled."
The fair conclusion in the instant case is that the petitioner became totally disabled as a result of the progress of the brain tumor and his other disabilities, unaffected by his industrial accident, and regardless thereof.
Under the circumstances petitioner failed to prove a right of recovery against the Fund under N.J.S.A. 34:15-95, and is expressly excluded under subsection (c).
Therefore, the judgment of the Essex County Court is affirmed.