PATRICK WALSH, PETITIONER-RESPONDENT, v. BETHLEHEM STEEL CORPORATION, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 30, 1986—Decided November 18, 1986.

Before Judges PRESSLER, BAIME and ASHBEY.

*John M. Walsh* argued the cause for appellant (*Schumann, Hession, Kennelly & Dorment*, attorneys; *John M. Walsh* on the brief).

*Lois J. Gregory*, Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards*, Attorney General, attorney; *James J. Ciancia*, Assistant Attorney General, of counsel; *Lois J. Gregory* on the brief).

The opinion of the court was delivered by

ASHBEY, J.A.D.

Appellant Bethlehem Steel Corporation (Bethlehem) appeals from an order of the Director of the Division of Workers' Compensation which requires Bethlehem to bear the entire burden of paying special adjustment benefits to the estate of Patrick Walsh under *N.J.S.A.* 34:15–95.4.

The material facts on this appeal are not in dispute. Bethlehem is a self-insurer for workers' compensation payments. Patrick Walsh was declared totally disabled by reason of injuries sustained on or before January 1, 1945 as a result of his work with Bethlehem. Were it not for the supplemental adjustment benefits provided by *N.J.S.A.* 34:15–95.4, Walsh's claim would have been limited to $20 a week for 450 weeks for which Bethlehem concedes it is responsible. It denies responsibility, however, for the amount of the supplemental adjustment over the same period of time which the Director of the Division ordered Bethlehem to pay.

Bethlehem's appeal presents a novel question of statutory interpretation. *N.J.S.A.* 34:15–95.4 states in pertinent part:

Payments of the adjustment shall be made from the fund created under R.S. 34:15–94 [Second Injury Fund] in the manner hereinafter provided. The Commissioner of Labor and Industry shall make payments from the fund directly to the persons who are now receiving benefits under R.S. 34:15–95 and to their dependents.... In the case of persons who are entitled to compensation under R.S. 34:15–12(b) [Walsh] or R.S. 34:15–13, the insurance carrier or self-insured employer in the second and subsequent fiscal years after enactment shall increase the weekly compensation payments to include the weekly adjustment and shall credit the payments against the assessments payable by the insurance

carrier or self-insurer under R.S. 34:15–94. The insurance carrier or self-insurer claiming such credit shall submit vouchers upon forms prescribed by the Commissioner of Labor and Industry identifying each case and indicating the weekly benefit adjustment applicable thereto.

Bethlehem's workers' compensation claims originate primarily under federal legislation and Bethlehem has historically made little or no payment to the Second Injury Fund (Fund). If obliged to advance the special benefit payments due on the Walsh claim, therefore, Bethlehem says it will never get the Fund credit foreseen in the statute. In words of Bethlehem,

The precise issue to be considered is who ∶ responsible for the special supplemental benefits to be paid to a totally disabled claimant where the rate of compensation applicable to the respondent is only $20.00 per week and the current rate [to claimants] is $192.39 per week, in an instance in which the respondent's liability to the Second Injury Fund is considerably less than the amounts to which the petitioner has been adjudged entitled to receive.

In support of its position, Bethlehem urges that the Legislature intended the Fund to be primarily responsible for all special benefit payments, and that requiring self-insured employers to advance payments was only a matter of bookkeeping convenience. The Fund asserts the contrary.

The special adjustment benefit was created by *L.* 1980, *c.* 83, codified at *N.J.S.A.* 34:15–95.4, as part of a package of amendments to the workers' compensation laws. The primary legislative purpose of these various revisions was to increase benefits to more seriously injured workers deemed to be receiving inadequate compensation under prior law. *Ries v. Harry Kane, Inc.,* 195 *N.J.Super.* 185, 196–197 (App.Div.1983). The benefits provided by this entire package of legislation were not, however, intended to increase the overall cost of the workers' compensation system.[1] Although there is no legislative history specifically directed to *N.J.S.A.* 34:15–95.4 and the issue at hand, the same increased benefit and cost-containment aims are

---

[1]"A predecessor of this legislation had been introduced in the previous Legislature as *Assembly Bill* 1735 (1978) and had been passed by the Legislature, but vetoed by Governor Byrne primarily because of problems of financing." *Ries v. Harry Kane, Inc., supra,* 195 *N.J.Super.* at 194.

evident in the history of the Second Injury Fund upon which Bethlehem Steel seeks to place complete responsibility for the Walsh claim. *See, e.g., Paul v. Baltimore Upholstering Co.,* 66 *N.J.* 111, 129 (1974).

The Second Injury Fund was created as "remedial legislation." *Ratsch v. Holderman,* 31 *N.J.* 458, 468 (1960) (Burling, J., dissenting). It was designed to distribute among all employers the compensation risk for injuries to workers who were previously handicapped. Contrary to Bethlehem's contention, the purpose of the Second Injury Fund was not to relieve employers completely of liability. *Cf. Ries v. Harry Kane, Inc., supra,* 195 *N.J.Super.* at 195. Rather, its purpose was to encourage employers to hire people with pre-existing disabilities. *Paul v. Baltimore Upholstering Company, supra,* 66 *N.J.* at 129. The fiscal integrity of the Fund has always been of prime concern to the legislature. In *Katz v. Township of Howell,* the New Jersey Supreme Court said:

> In arriving at his conclusions the Judge of Compensation described the Second Injury Fund as remedial in nature and subject to liberal construction in favor of employers. There is no foundation for this viewpoint. As we have pointed out recently, the legislative policy is a delicately balanced one, designed, it is true, to encouragé employers to hire partially disabled workers, yet at the same time concerned against inroads upon the Fund unless all the statutory criteria ... are satisfied. [*Katz v. Township of Howell,* 68 *N.J.* 125, 131–132 (1975); citation omitted].

We consider this reasoning particularly persuasive in connection with the employer reimbursement for special benefits where there is no purpose "to encourage employers to hire partially disabled workers." *Id.* at 131. Nothing in legislative history persuades us that the legislature intended to abandon the primary liability of the employer by the creation of the Fund or the addition of special benefit adjustments.

Retaining the individual employer's ultimate responsibility is in accord with generally accepted principles stated in 1 *Larson, Workmen's Compensation Law,* sec. 3.40 at 20–21 (1964) and with the law of other states which have considered the question. *See, e.g., Arduser v. Daniel International Corp.,* 7

*Kan.App.* 225, 640 *P.*2d 329 (1982) (liability of employer is direct); *Yocum v. Jordon Auto Parts Co.*, 521 *S.W.*2d 519 (Ky.1975) (employer and insurer denied reimbursement from Special Fund since their settlement with claimant was final and approved by Board); *White v. Weinberger Builders, Inc.*, 397 *Mich.* 23, 242 *N.W.*2d 427 (1976) (affirming Board's decision that the liability of the Second Injury Fund is derivative from that of the employer); *Levi v. Special Indemnity Fund*, 389 *P.* 2d 620, 621–22 (Okla.1964) (holding that the "Special Indemnity Fund Act does not undertake to cast upon the Fund prime liability which could be viewed as original and wholly distinct, independent and disconnected from that of the last employer.").

We are further persuaded appellant's due process and equal protection arguments are without merit. *Cf. Gange Lumber Co. v. Rowley*, 326 *U.S.* 295, 66 *S.Ct.* 125, 90 *L.Ed.* 85 (1945). *Compare Landrum v. Air America, Inc.*, 534 *F.*2d 67 (5th Cir.1976), where it was said, "Synoptic and benevolent legislation such as we confront here does not always mandate equal treatment for all those within its scope." *Id.* at 70.

■ Moreover, were we to emphasize the remedial purpose of this legislation in favor of Bethlehem, such exercise would be at the expense of other employers. In keeping with the evident legislative goal of balancing liability among employers, it does not appear to us arbitrary to spare employers who pool assessments to the Fund the burden of paying supplemental benefits, while requiring employers who do not pay Fund assessments to pay supplemental benefits.

■ For all of the above reasons we conclude that the intent of the legislature as expressed justifies the order in question. Bethlehem Steel must advance the supplemental benefits in question and seek credit at some future time, if such time occurs.

Affirmed.