756 A.2d 1012

HENRY N. WALSH, PETITIONER–RESPONDENT, v. RCA/GEN-
ERAL ELECTRIC CORP., RESPONDENT–RESPONDENT, AND
SECOND INJURY FUND, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 15, 2000—Decided June 29, 2000.

Before Judges WALLACE, Jr., CUFF and LESEMANN.

*Lois J. Gregory*, Deputy Attorney General, argued the cause for appellant (*John J. Farmer*, Attorney General of New Jersey, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel; *Ms. Gregory*, on the brief).

*David Tykulsker*, argued the cause for respondent Henry N. Walsh (*David Tykulsker & Associates*, attorneys; *Mr. Tykulsker*, on the brief).

*Robert J. Young*, argued the cause for respondent RCA/General Electric Corp. (*Young & Perez*, attorneys; *Mr. Young*, on the brief).

The opinion of the court was delivered by

CUFF, J.A.D.

In this appeal, we must determine whether the Second Injury Fund (the Fund) is liable for a portion of total disability benefits when the claimant has a pre-existing disability but is not in the work force at the time the compensable injury became manifest. The Judge of Compensation held the Fund liable. We affirm.

The facts are largely undisputed. In 1958, petitioner Henry Walsh began working for respondent RCA/General Electric Corp. (RCA/GE) as a maintenance mechanic and electrician. During his employment, petitioner was exposed to a myriad of chemicals and substances, including asbestos. In 1972, petitioner suffered a second heart attack. He returned to work performing lighter duties as a troubleshooter. Eventually, his physicians advised him to lift no more than twenty pounds and to avoid using stairs. In 1984, due to an increase of physical demands with his job as a troubleshooter for RCA/GE, petitioner chose to take a service-

based, non-disability retirement from RCA/GE and he began to receive Social Security retirement benefits. In 1991, petitioner developed asbestosis due in material part to asbestos exposure during his employment at RCA/GE.

At the conclusion of the trial, Judge of Compensation Kumpf concluded that petitioner's asbestosis was causally related to his exposure to asbestos while employed at RCA/GE. He also concluded petitioner was totally and permanently disabled when his pulmonary disability was fixed by medical evaluation in 1995. Although he found that petitioner retired as a result of his cardiac condition, he also found that all of the medical evidence established that petitioner was not totally and permanently disabled as a result of the cardiac disease. Thus, he concluded that "the total permanent disability was a result of the cardiac disease and the last compensable occupational pulmonary disease. The addition of the asbestosis to petitioner's cardiac disease result[ed] in petitioner being totally and permanently disabled."

Judge Kumpf also found the Fund liable. He held that an employee is entitled to disability benefits from the Fund when, as here, an employee becomes totally and permanently disabled as a result of a latent occupational disease. He reasoned that petitioner could have returned to employment before the asbestosis was diagnosed in 1995 despite his retirement in 1984 because his cardiac condition rendered him only partially disabled. After 1995, however, the pre-existing cardiac condition combined with the occupational pulmonary disease to render petitioner totally and permanently disabled. He held that "[a]s long as the preexisting disability preexists the last date of employment and the character of the disability at the time of fixing the disability from the compensable occupational disease is total and permanent disability, then the Fund is responsible for the preexisting disability." Prior to allocating responsibility to the Fund, Judge Kumpf specifically rejected the Fund's argument that petitioner's cardiac disease rendered him totally and permanently disabled at the time of his 1984 retirement. He also rejected the Fund's legal argu-

ment that petitioner is not eligible for Fund benefits because he was not actually working at the time his pulmonary disease became manifest. RCA/GE was ordered to pay petitioner 225 weeks of compensation at $315.37 per week from December 28, 1995 through April 19, 2000; thereafter, the Fund is responsible for the benefits.

On appeal, the Fund argues that petitioner was totally and permanently disabled in 1984 when he retired from RCA/GE on a service retirement. Because he left the work force in 1984 due to the cardiac condition, the Fund reasons it is not liable. The Fund also argues that the Legislature intended its benefits to be available only when there has been a loss of employment as a result of the combination of compensable and non-compensable injuries. The Fund contends that imposing liability on it when petitioner has been retired from employment for more than eleven years before the latent occupational disease was fixed and measurable, converts the Fund into an insurance or old age scheme contrary to the intent of the Legislature. The Fund insists it is only liable when the work-related injury or condition forces the employee to leave the labor force. RCA/GE responds that the Legislature contemplated Fund responsibility for this situation.

The Fund was established by the Legislature, pursuant to *N.J.S.A.* 34:15–95, as a means to "encourage the hiring by industry of people handicapped by pre-existing disabilities...." *Paul v. Baltimore Upholstering Co.*, 66 *N.J.* 111, 129, 328 *A.*2d 610 (1974). The Fund is liable when a pre-existing condition combined with a work-related accident or disease renders a person totally and permanently disabled. *N.J.S.A.* 34:15–95; *Lewicki v. New Jersey Art Foundry*, 88 *N.J.* 75, 83, 438 *A.*2d 544 (1981). The statute aims to protect employees from being denied employment based on their pre-existing condition and risk of total disability. It also protects the employer from the obligation of absorbing the entire burden of paying for a total disability it did not cause.[1]

---

[1] Prior to the enactment of *N.J.S.A.* 34:15–95, an employer was obligated to pay permanent and total disability benefits for the entirety of an employee's

*Paul, supra,* 66 *N.J.* at 129, 328 *A.*2d 610; *Lewicki, supra,* 88 *N.J.* at 83, 438 *A.*2d 544. Under present law, an employer is only required to pay the value of the disability caused by the occupationally compensable condition related to the employment. *N.J.S.A.* 34:15–95; *Lewicki, supra,* 88 *N.J.* at 83, 438 *A.*2d 544. The Fund then pays the value of the partial permanent disability which pre-existed the last compensable disability. *Ibid.* Total and permanent disability extends for a period of 450 weeks; once this period expires, the Fund is responsible for paying continuing lifetime benefits pursuant to *N.J.S.A.* 34:15–12(b).

*N.J.S.A.* 34:15–95, governing liability of the Fund, provides in pertinent part:

> The sums collected under [*N.J.S.A.*] 34:15–95 shall constitute a fund, to be known as the Second Injury Fund, out of which a sum shall be set aside each year by the Commissioner of Labor from which compensation payments in accordance with the provisions of paragraph (b) of [*N.J.S.A.*] 34:15–12 shall be made to persons totally disabled, as a result of experiencing a subsequent permanent injury under conditions *entitling such persons to compensation therefor,* when such persons had previously been permanently and partially disabled from some other cause; provided, however, that, not withstanding the time limit fixed therein, the provisions of paragraph (b) of [*N.J.S.A.*] 34:15–12 relative to extension of compensation payments beyond 400 or 450 weeks, as the case may be, shall, with respect to payments from the Second Injury Fund, apply to any action occurring since June 27, 1923, and in no case shall be less than $5.00 per week . . .
>
> *[N.J.S.A.* 34:15–95.]

There are provisions which limit the Fund's liability:

> [N]o person shall be eligible to receive payments from the Second Injury Fund:
>
> (a) If the disability from the injury caused by the person's last compensable accident in itself and irrespective of any previous condition or disability constitutes total and permanent disability within the meaning of this Title.
>
> (b) (Deleted by amendment.)
>
> (c) If the disease or condition existing prior to the last compensable accident is progressive and by reason of such progression subsequent to the last compensable accident renders the person totally disabled within the meaning of this Title.

---

lifetime regardless of whether the permanent and total disability was partially caused by a pre-existing condition. *See Belth v. Anthony Ferrante & Son, Inc.,* 47 *N.J.* 38, 45–48, 219 *A.2d* 168 (1966).

(d) If a person who is rendered permanently partially disabled by the last compensable injury subsequently becomes permanently totally disabled by reason of progressive physical deterioration or pre-existing condition or disease.

Nothing in the provisions of said paragraphs (a), (c) and (d), however, shall be construed to deny the benefits provided by this section to any person who has been previously disabled by reason of total loss of, or total and permanent loss of use of, a hand or arm or foot or leg or eye, when the total disability is due to the total loss of, or total and permanent loss of use of, two or more of said major members of the body, or to any person who in successive accidents has suffered compensable injuries, each of which, severally, causes permanent partial disability, but which in conjunction result in permanent total disability. Nor shall anything in paragraphs (a), (c) or (d) aforesaid apply to the case of any person who is now receiving or who has heretofore received payments from the Second Injury Fund.

[*Ibid.*]

The Fund concedes that petitioner is permanently and totally disabled. It does not argue that any of the limitations enumerated in *N.J.S.A.* 34:15–95(a), (c) or (d) apply in the present case to preclude benefit eligibility. Rather, it asserts an argument that appears to have no basis in statutory or case law: that petitioner is not eligible for disability benefits from the Fund because petitioner was not working at the time his occupational pulmonary disease became manifest. The Fund relies on the premise that its purpose is to protect employees from being denied employment based on a pre-existing condition or disability. Accordingly, the Fund contends that the Legislature never intended it to assume liability in situations where the employee has already retired and never returned or intended to return to work. It argues, therefore, that Judge Kumpf's decision subjected the Fund to "undue invasion," *Paul, supra,* 66 *N.J.* at 129, 328 *A.*2d 610, and "saddled" its limited resources "with additional financial obligations" not mandated by the Legislature. *Wright v. Port Authority,* 263 *N.J.Super.* 6, 15, 621 *A.*2d 941 (App.Div.), *certif. denied,* 133 *N.J.* 442, 627 *A.*2d 1147 (1993). The Fund concedes, however, that this may be only the first instance in which it has been held liable under these circumstances.

There is no stated requirement in *N.J.S.A.* 34:15–95 that an employee must be actively participating in the work force when a pre-existing disability acts in conjunction with an occupational

injury to render him totally and permanently disabled to qualify for Fund benefits. In fact, this court has held there is no basis to conclude "that the total disability must occur on the day of the [compensable work] accident." *Mayti v. Male,* 59 *N.J.Super.* 478, 486, 158 *A.2d* 70 (Cty.Ct.1960), *aff'd,* 79 *N.J.Super.* 554, 192 *A.2d* 309 (App.Div.1963).

Contrary to the Fund's position, the explicit language of *N.J.S.A.* 34:15–95 supports eligibility in a case like this, although the issue appears to be one of first impression. The only causal connection explicitly mandated by the statute is that the prior disability and later occupational condition must have acted together to cause the total and permanent disability, and this case meets that standard. *Schulman v. Male,* 70 *N.J.Super.* 234, 240, 175 *A.2d* 450 (App.Div.1961).

Further, a pre-existing condition or disability need not be static to form a basis for Fund liability. *Lewicki, supra,* 88 *N.J.* at 85–86, 438 *A.2d* 544. Every prior disability which contributes to an employee's total and permanent disability does not have to meet a "rigorous literal formula" of " 'fixed, measurable and arrested' " preceding the occurrence of a compensable occupational injury. *Id.* at 86, 438 *A.2d* 544; *Gulick v. H.M. Enoch, Inc.,* 280 *N.J.Super.* 96, 114, 654 *A.2d* 987 (App.Div.1995). Fund liability would only be precluded if petitioner was deemed totally and permanently disabled as a result of progressive physical deterioration subsequent to the compensable work-related injury or disease. *N.J.S.A.* 34:15–95(c) and (d); *Lewicki, supra,* 88 *N.J.* at 87, 438 *A.2d* 544. That is not this case.

*N.J.S.A.* 34:15–95 was enacted as " 'remedial legislation' ... designed to distribute among all employers the compensation risk for injuries to workers who were previously handicapped," *Walsh v. Bethlehem Steel Corp.,* 214 *N.J.Super.* 6, 10, 518 *A.2d* 230 (App.Div.1986) (citation omitted), *certif. denied,* 107 *N.J.* 87, 526 *A.2d* 165 (1987), and it must be interpreted as such when reviewing the statutory requirements and limitations. Here, the Fund is, in essence, presenting a public policy extra-statutory exception

to relieve itself from liability. Engrafting extra-statutory conditions where they do not exist is highly disfavored. In a case involving "elective compensative" benefits pursuant to *N.J.S.A.* 34:15–7, this court criticized the practice of reading defenses into an existing workers' compensation statute which plainly enumerates affirmative requirements and explicit exceptions or limitations. *Akef v. BASF Corp.*, 275 *N.J.Super.* 30, 44, 645 *A*.2d 158 (App.Div.1994), *aff'd*, 140 *N.J.* 408, 658 *A*.2d 1252 (1995). Specifically, this court held:

> The Legislature substantially revised the Workmens' Compensation Act in 1979 but did not include [argued] defense. The generally-recognized rules of statutory construction do not favor our now engrafting such a defense onto the existing statute. The statute already provides the enumerated exceptions quoted earlier. The provision for such exceptions in a statute indicates a legislative intent that the statute be applied to all other cases not specifically excepted. ...
>
> Additionally, the cases are legion over the years requiring the Workers' Compensation Act to be liberally construed in favor of the claimant. 'Nothing is to be read into the [Workers' Compensation Act] by judicial construction because of some supposed reason of policy. The primary subject of inquiry is the legislative intention, as expressed in the statute. ... [T]here is ... no warrant ... for the inclusion of matters not expressly provided, or reasonably to be implied.'
>
> [*Akef, supra,* 275 *N.J.Super.* at 43–44, 645 *A*.2d 158 (citations omitted).]

Here, Judge Kumpf held the Fund liable and specifically found the Fund was attempting to create an extra-statutory exception. He found that at the time of petitioner's retirement, petitioner suffered only partial permanent disability and that total permanent disability did not occur until the pre-existing cardiac condition combined with the occupational pulmonary condition. Judge Kumpf also concluded that petitioner could have returned to work, albeit sedentary work, between 1984, when he retired from RCA/GE, and 1995, when his total permanent disability was fixed. He compared petitioner to firemen or police officers who often retire at a young age but later seek additional employment.

Although petitioner testified he enjoyed retirement and did not seek employment after 1984 for fear of another heart attack, his retired status is not synonymous with inability to work. Since 1995, however, petitioner could not return to work due to his pre-existing cardiac disability and his occupational pulmonary disabili-

ty. This appears to be precisely the situation for which the Fund was created.

If the Legislature intended to preclude Fund liability in cases where employees suffering from a partial permanent disability voluntarily leave the work force before a latent occupational injury becomes manifest, we presume the Legislature would have specifically so provided. It is not the role of this court to create public policy in the face of the express requirements and exceptions of the statute. *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 114, 469 *A.*2d 22 (1984). Therefore, we affirm Judge Kumpf's determination that petitioner is entitled to disability benefits from the Fund.

We also reject the Fund's argument that petitioner was totally and permanently disabled at the time of his service retirement in 1984. The Judge of Compensation found that petitioner's cardiac condition rendered him only permanently partially disabled.

On appeal, our review of the findings by the Judge of Compensation is narrowly circumscribed. If our review of the record demonstrates that the factual findings could reasonably have been reached on sufficient credible evidence in the whole record, with due regard to the factfinder's expertise and ability to assess credibility of the various witnesses, we must affirm. *Ramos v. M & F Fashions*, 154 *N.J.* 583, 594, 713 *A.*2d 486 (1998); *Close v. Kordulak*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965). Measured by this standard, we affirm Judge Kumpf's findings that petitioner was not totally and permanently disabled in 1984.

The record reveals petitioner suffered two cardiac incidents in the early 1970's. It also reveals petitioner's treating doctor at the time of these incidents suggested he retire. Nonetheless, petitioner returned to work as a troubleshooter and engaged in lighter work than previously required as a maintenance man/electrician. The only limitations placed on petitioner was to lift or carry no more than twenty to twenty-five pounds of weight and avoid stairs. Petitioner was forced to retire from RCA/GE because work demands increased and required non-compliance with peti-

tioner's limitations. As petitioner's job became more strenuous and physically demanding, symptoms of cardiac strain started to emerge. The retirement was forced by virtue of the increased duties outside the scope of petitioner's limitations and partial disability, and not due to an inability to work at all. As noted, petitioner's inability to maintain the increased physical labor required by his employer cannot and does not lend support to an argument that there is no job in the employment market for which petitioner was · qualified. Further, none of petitioner's treating physicians opined that he suffered from a total cardiac disability.

Moreover, it is significant that petitioner's heart condition remained relatively stable from the late 1970's to the present time. Medical reports dated March 1982, March 1983, January 1984, May 1985, April 1986, October 1997, April 1989 and June 1990 all reveal petitioner was "doing quite well" and that there was no significant change in his heart condition. Further, the records do not suggest any cardiac progression which would require other limitations or aggressive management, such as catheterization. Thus, Judge Kumpf's finding that petitioner's cardiac disability did not totally disable petitioner is well founded in the record.

Accordingly, we affirm Judge Kumpf's finding that petitioner was not totally and permanently disabled when he retired in 1984, as well as his conclusion concerning Fund liability.

Affirmed.