ENOS ORT (C-5240), PETITIONER, v. TAYLOR-WHARTON CO., DIVISION OF HARSCO CORPORATION (IMPLEAD-ED AS TAYLOR-WHARTON IRON & STEEL COMPANY), RESPONDENT.

ENOS ORT (D-87337), PETITIONER, v. TAYLOR-WHARTON CO., DIVISION OF HARSCO CORPORATION, RESPONDENT.

Argued April 25, 1966—Decided May 23, 1966.

200

Mr. *Everett Rhinehart* argued the cause for respondent Taylor-Wharton Co., Division of Harsco Corporation (*Mr. John W. Taylor,* attorney, and *Mr. Rhinehart,* of counsel).

Mr. *William T. McElroy* argued the cause for respondent New Jersey Manufacturers Casualty Insurance Company (*Messrs. Pindar, McElroy, Connell & Foley,* attorneys, and *Mr. McElroy* of counsel).

Mr. *Henry Harris* argued the cause for petitioner (*Messrs. Rothbard, Harris & Oxfeld,* attorneys, and *Mr. Harris* of counsel).

*Mr. Richard Newman,* Deputy Attorney General, argued the cause for Raymond F. Male, Commissioner of Labor and Industry and Trustee of the One Per Cent Fund (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney, and *Mr. Newman* of counsel and on the brief).

The opinion of the court was delivered by

FRANCIS, J. This is a workmen's compensation occupational disease case. The petitioner Enos Ort was employed for many years in respondent's foundry where in the course of his work he was extensively exposed to dust. On November 21, 1956 he filed a petition for compensation claiming that the dust inhalation had caused pneumoconiosis and emphysema which produced substantial permanent disability. After hearing at which the compensability of his claim was not contested the judge of compensation found that the incapacity was fixed, measurable and permanent and amounted to 30% of total permanent disability. Judgment for that percentage was awarded. It is not clear from the record whether the proceeding was a contested one or a species of settlement commonly referred to as a "streamline judgment." At the time of filing of the petition for compensation the New Jersey Manufacturers Casualty Insurance Company was the employer's insurer, and accordingly payment of the judgment was assumed by it.

Thereafter Ort returned to respondent's employ where he continued to be exposed to the dust. At this time the workmen's compensation risk had been assumed by the Liberty Mutual Insurance Company, it having replaced the New Jersey Manufacturers as the carrier. On February 27, 1961 Ort filed two new petitions for compensation alleging that as of March 2, 1959 (the date of cessation of work) his exposure to dust had resulted in total permanent disability. In one petition he sought a modification of the earlier judgment awarding him compensation for 30% of total permanent disability, alleging that the disease which produced that disability had progressed so as to increase the incapacity to total. There-

fore, he claimed that the earlier judgment should be altered so as to provide compensation for the total disability then existing. See *N. J. S. A.* 34:15–27. Since this alleged cause of action related back to the initial claim the original carrier, New Jersey Manufacturers, defended the employer in that case, as concededly it was obliged to do.

The thesis of the second petition for compensation was that the increase from 30% to total permanent disability existing as of February 27, 1961 resulted from an additional exposure to the employment dust and that such exposure superimposed an additional and independent disability on the already existing and fixed 30%, that is, a further 70% which in combination produced total and permanent incapacity. This alleged cause of action having come into existence when the Liberty Mutual was on the risk, it was required to assume the defense and the payment of any judgment awarded thereon.

The two actions were consolidated for trial. After hearing the medical evidence all of which agreed the petitioner was totally and permanently disabled, the judge of compensation dismissed the petition seeking to charge the increase in disability to a natural progression of the disease, and therefore the responsibility of the New Jersey Manufacturers Casualty Insurance Company. He held that at the time of the award of 30% of total permanent disability, the incapacity was fixed and certain, not of itself progressive and would not have progressed were it not for the additional hazard, in the sense of new or independent exposure to dust. This finding signified that Ort had not sustained the burden of proving by a preponderance of the evidence that the additional 70% disability was causally related to the original exposure. *Schiffres v. Kittatinny Lodge, Inc.,* 39 *N. J.* 139, 149 (1963).

On the second petition the judge found that Ort's disability was total and permanent and that the additional 70% was chargeable to the Liberty Mutual since it was on the risk during the later exposure and particularly at the time when Ort was forced to cease working. In fine, so far as the additional 70% is concerned the judge treated it just as though

the exposure which produced it had come from a different employment. He found in effect that at the time of the 30% award the disability was fixed and static; if Ort had ceased the exposure to dust there would have been no change in his condition. Then he seems to have found that the continued exposure thereafter constituted a new and independent incident which, of and by itself, produced a disability to the extent of 70% of total. He treated the later exposure as if it were a second and distinct "accident," causing its own separate measure of disability, *i. e.* 70% of total.

As a consequence of his findings the judge declared Ort to be entitled to compensation on the basis of 100% disability, 30% of which constituted the full measure of the New Jersey Manufacturers liability, and the remaining 70%, plus any additional payments to be made after payment of the 450 weeks compensation (because of failure of rehabilitation) representing the responsibility of Liberty. See *N. J. S. A.* 34:15–12(b).

Liberty appealed the award to the County Court and thereafter to the Appellate Division, both of which affirmed the judgment in unreported opinions. A number of grounds of appeal were urged, particularly that the findings and judgment of the judge of compensation required a holding that the One Per Cent Fund, *N. J. S. A.* 34:15–95, is responsible for any payments after Ort has received 450 weeks of compensation. The Commissioner of Labor and Industry, who administers the Fund, was not a party to the proceedings in any tribunal below. We granted certification and requested the Commissioner to present his views on the issues involved. 47 *N. J.* 80 (1965).

In the briefs and oral argument before us the Commissioner and the petitioner took the position the One Per Cent Fund is not involved, while Liberty urged the contrary view. After a consideration of the case we are of the view that the matter should be remanded so that the Commissioner of Labor and Industry can be joined as a respondent, the nature and significance of the present judgment reviewed, and the problem

of liability of the One Per Cent Fund fully explored in light of that judgment.

## I.

Under *N. J. S. A.* 34:15–95 the Fund comes into the zone of liability when a workman becomes totally and permanently disabled as a result of experiencing subsequent permanent injury under conditions entitling him to compensation therefor, when he had "previously been permanently and partially disabled from some other cause," subject to four other specified qualifications. Three of them, subsections (a), (c) and (d), obviously are inapplicable and so need not be mentioned. The fourth, subsection (b) is inapplicable also but may throw some light on the over-all problem. It operates as a bar to Fund liability "[i]f permanent total disability results from the aggravation, activation or acceleration, by the last compensable injury, of a *pre-existing noncompensable disease* or condition." ("Compensable injury" in this context would appear to have the same connotation as "compensable occupational disease." *Cf. N. J. S. A.* 34:15–32.) In the present case the 70% of total permanent disability did not result from aggravation of a "pre-existing noncompensable disease." That percentage added to or attached itself to a pre-existing disease compensable to the extent of 30% of total disability. And the 30% had been declared by judgment to be measurable, fixed and arrested. *Cf. Brooks v. Bethlehem Steel Co.,* 66 *N. J. Super.* 135, 146 (*App. Div.*), certif. denied 36 *N. J.* 29 (1961). In view of the language of subsection (b) therefore, could it be said that if an employee had suffered a previous compensable occupational disease with a different employer, which had caused 30% of total permanent disability, and later became exposed to an occupational condition which independently caused the static disease to escalate to total disability, the One Per Cent Fund would not be liable after the second employer had made payments equalling 70% of total, and the workman continued to be

entitled to compensation after 450 weeks because of failure of rehabilitation? Would it make any difference that in the second employment he was exposed to the same kind of dust or that his total disability was from the same disease? Should it make any difference then to the availability of the Fund that in the present case Ort had a compensable, measurable, fixed, static, non-progressive disease before the additional exposure for the same employer which independently and of itself added 70% more to the existing disability?

Is not the situation the same as if Ort had sustained two separate and distinct compensable accidents each of which produced a percentage of partial total disability, but which in combination rendered him 100% disabled? Suppose a part of a machine on which Ort was working struck him in the chest causing damage to both his lungs and he was awarded 30% of total permanent disability for the injury. After returning to work for the same employer and while operating the same machine, the same part again struck him in the chest again injuring and aggravating the existing lung condition so as to cause total permanent disability. Would not the Fund be liable for any compensation required to be paid after 450 weeks? In this connection the paragraph of *N. J. S. A.* 34:15–95 which follows the limiting subsections (a), (b), (c) and (d) referred to above, says nothing in their provisions shall be construed to deny Fund benefits "to any person who in successive accidents has suffered compensable injuries, each of which, severally, causes permanent partial disability, but which in conjunction result in permanent total disability."

Those opposing the thesis of Fund liability here rely upon one phrase in the first paragraph of *N. J. S. A.* 34:15–95, noted above, namely that access may be had to its benefits by persons totally disabled as the result of experiencing a subsequent compensable permanent injury, when such persons have previously been permanently and partially disabled "from some other cause." They maintain that Ort's disability came from the same cause, namely pneumoconiosis and emphysema

resulting from the same type of dust exposure with the same employer.

It must be conceded the phrase creates some ambiguity in the application of the statute here. But in light of all of the provisions described can it be said that the Legislature intended to treat a pre-existing partial permanent disability caused by a fixed, non-progressive disease resulting from a specific period of dust exposure, as the "same cause," particularly in the face of a determination that the additional 70% which raised the existing incapacity to total, came from a different period of exposure, in the absence of which incapacity would not have increased. Here it may be noted that in *Calabria v. Liberty Mutual Insurance Co.*, 4 *N. J.* 64, 71 (1950) this Court indicated that if increased disability results from continued exposure, as distinguished from the natural progress of the disease, an award against a subsequent carrier would be in order. On the other hand if the increased disability followed as the natural progress of the disease, the first carrier, or the first employer, if the employment had been changed after the original award, would be held responsible. See, 2 *Larson, Workmen's Compensation Law,* § 95.26 (1961).

All of those questions have arisen because of the seemingly clear line of demarcation drawn by the judge of compensation between the first dust exposure which was responsible for 30% of the total disability, and the second, which separately and independently and without regard to the non-progressive, pre-existing static incapacity, caused an additional 70% of total disability. As was said at the outset, we shall not attempt either to resolve the questions on this record or to express any firm view thereon. In our judgment it would be more appropriate for the Division to explore the matter against a background of the entire proceeding and with the Commissioner of Labor and Industry as an active party and participant. In connection with the Commissioner's appearance as a party we point out that the judgment discharging New Jersey Manufacturers from liability on the

second petition for further compensation, and the judgment awarding the additional 70% of partial permanent compensation against Liberty Mutual on the petition against it, although binding on the two carriers, are not *res judicata* against him. He is entirely free to contend, and to offer supporting proof, medical or otherwise, that Ort's increase in disability from 30% to total permanent disability did not arise "from some other cause" as the statute requires, but came from the same cause which produced the 30%. And, of course, he may raise any other pertinent defense to the alleged liability of the Fund for such payments as may be required after 450 weeks. Moreover, in the proceeding under discussion, the burden will not be on the Commissioner to demonstrate non-liability of the Fund. On the contrary the burden of persuasion in that regard rests with Liberty, whose liability for compensation after the 450 week period must be recognized, unless that carrier establishes an obligation under the statute on the part of the Fund to take over such payments.

## II.

The record reveals that payment of 165 weeks compensation representing the award of 30% of permanent total disability had not been completed by New Jersey Manufacturers when the second judgment requiring Liberty to pay for the additional 70% was entered. New Jersey Manufacturers continued payments until December 15, 1959 when the award became fully satisfied. In the meantime under the second award Liberty was directed to pay compensation for *temporary* disability from November 1, 1958 to May 13, 1959, with payments for the 70% of permanent total disability to begin on the latter date. Liberty argues it should not have been required to make any payments on the award against it until the first judgment had been fully satisfied. In support of its position reliance is placed on *N. J. S. A.* 34:15–16 which provides in pertinent part:

"Compensation for all classes of injuries shall run consecutively, and not concurrently, * * * as follows: First, medical and hospital services and medicines as provided in said section 34:15–15. After the waiting period, compensation during temporary disability. * * * Following both, * * * compensation consecutively for each permanent injury * * *."

██ The significance of the statutory language is that where a second award of compensation for partial permanent disability is made while a previous award for partial permanent disability is being paid, but has not been satisfied fully, payment on the second award should not begin until after the last installment of the first has been delivered. *Cf. Diskon v. Bubb*, 88 *N. J. L.* 513 (*Sup. Ct.* 1916). This rule, however, does not apply to payment of compensation for temporary disability for a second compensable accident which occurs while payments for permanent disability are being made on an outstanding award arising from an earlier accident. Obviously, if a workman is given an award for partial permanent disability, returns to work while it is being paid, and sustains a second compensable accident causing temporary disability, compensation therefor should be paid notwithstanding the other award then being paid. The statute provides no bar. Moreover there is no conflict between the two types of payments because compensation for temporary disability represents a partial substitute for loss of current wages.

██ Under the circumstances we may put aside the payments of compensation for temporary disability under the second award. There was no error in paying such compensation while the permanent disability payments under the first award were being made. The inception date of Liberty's liability for permanent disability payments under the second award, however, became fixed as of December 15, 1959 when the last payment of the first 165 week award was made. This represents no diminution in extent of Liberty's monetary obligation under the award; simply a recognition of the statutory mandate to satisfy two permanent disability awards consecutively and not concurrently, and thus avoid double

weekly payments. The extent to which the compensation payments overlapped on the two awards is not clear from the record, nor is it clear whether any adjustments have been made with respect thereto. In view of our holding, the parties are directed to adjust the payment schedule to bring it into compliance. If they cannot agree, the matter may be presented to the judge of compensation for resolution on the remand.

### III.

We have examined the other grounds of appeal presented, and find no merit in any of them as would require reversal.

For the reasons stated the judgment is modified, and the matter is remanded to the Division to be disposed of in accordance herewith.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*Opposed*—None.