175 N.J. Super. 513 (1980)
420 A.2d 1022
ALBERT DELESKY, PETITIONER-APPELLANT,
v.
TASTY BAKING CO. AND THE COMMISSIONER OF LABOR & INDUSTRY, AS CUSTODIAN FOR THE SECOND INJURY FUND, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1980.
Decided September 29, 1980.
*514 Before Judges BOTTER, KING and McELROY.
William H. Covert argued the cause for appellant (Kapelsohn, Lerner, Reitman & Maisel, attorneys; William H. Covert, on the brief).
Sheldon Schiffman argued the cause for respondent Tasty Baking Co. (Fred S. Brause Jr., attorney; Sheldon Schiffman on the brief).
Allan L. Lockspeiser, Deputy Attorney General, argued the cause for respondent Commissioner of Labor & Industry (John J. Degnan, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel; Robert J. Haws, Deputy Attorney General, on the brief).
The opinion of the court was delivered by McELROY, J.A.D.
This is a workers' compensation case. Petitioner-appellant is totally disabled. This fact is not disputed. While he is the appellant the real dispute is between his employer, Tasty Baking Co. (Tasty) and the Second Injury Fund (Fund) as to liability to petitioner for payment of compensation beyond the 450-week base period. N.J.S.A. 34:15-12(b); N.J.S.A. 34:15-95.
Petitioner was in Tasty's employ on April 11, 1972 when he sustained compensable injury to his lower back. He filed a claim petition against Tasty. The Fund was brought into the matter by the employer. Petitioner had sustained compensable injuries to his lower back on two prior occasions. For these *515 accidental effects he was awarded 22 1/2% of partial total disability on January 2, 1965 and 21 1/2% on June 11, 1969.
N.J.S.A. 34:15-95(b), as it existed when the decisions below were rendered, provided that a totally disabled worker could not receive Fund benefits if such disability resulted "from the aggravation, activation or acceleration, by the last compensable injury, of a preexisting noncompensable disease or condition."[1] Our Supreme Court, in reviewing this section, held that where there is aggravation, activation or acceleration of a prior condition by a later compensable accident it is of no moment, in the legislative scheme, whether the preexisting condition was compensable or not. In either case the Fund is not liable to the employee. Paul v. Baltimore Upholstering Co., 66 N.J. 111, 127-129 (1974).
The hearing on petitioner's claim involving the 1972 accident resulted in a determination by the judge of compensation that petitioner was totally disabled. On the issue of Fund benefits the judge found that the last compensable injury combined with the injuries sustained in the two prior accidents to produce total disability. He found, however, that the last accident did not aggravate the effects of the two prior accidents. Pursuant to N.J.S.A. 34:15-95.1 the judge recommended to the Commissioner of Labor that the Fund be held liable to petitioner. N.J.S.A. 34:15-95(b).
The only party aggrieved by this advisory report was the Fund, whose attorney filed with the Commissioner exceptions in the form of a brief. No hearing was had at this level (we do not suggest a hearing is necessary). The only papers filed by any party with the commissioner were the exceptions asserted by the Fund. Joseph F. McCarthy, "Director, Office of Special Compensation Funds for the `Commissioner' of Labor and Industry," acting for the Commissioner, reviewed the matter and concluded that petitioner's last accident "aggravated and worsened" his preexisting conditions. Director McCarthy therefore entered an *516 order rejecting the trial judge's recommendations and dismissing the application for Fund benefits.
Petitioner then moved before the judge of compensation for an order modifying the judgment against Tasty to charge his employer with responsibility for total disability, including any payments later due under N.J.S.A. 34:15-12(b). At the hearing on the motion Tasty and the Fund argued that the judge of compensation had no jurisdiction to so modify his award and that petitioner's remedy was to appeal the Commissioner's order. The judge held the same view and denied the motion "for lack of jurisdiction." This appeal followed.
We are thus presented with a conflict of opinion between the factual conclusions drawn by the judge of compensation before whom all witnesses appeared and testified and those of the agent of the Commissioner who appears to have undertaken, in some degree at least, a paper review of the matter. We approach the problem with an awareness of the settled principles of Close v. Kordulak, 44 N.J. 589, 598-599, 210 A.2d 753 (1965), tempered by the collateral observation of Judge Jayne that, "`the best and most accurate record [of oral testimony] is like a dehydrated peach; it has neither the substance nor the flavor of the peach before it was dried.'" Trusky v. Ford Motor Co., 19 N.J. Super. 100, 104 (App.Div. 1952). This simple truth applies equally to our review and that conducted by the Commissioner of Labor.
The peculiar circumstance of the possibility of such a conflict between the judge of compensation and the Commissioner exists by reason of N.J.S.A. 34:15-95.1. This statute requires that a claim for Fund benefits shall be addressed to the Commissioner "who shall refer it to a [judge of compensation] to hear testimony and for an advisory report as to findings.... The decision, however, as to whether the petitioner shall or shall not be admitted to the benefits shall be rendered by the said Commissioner of Labor...."
In Vann v. M.P. Godkin Mfg. Co., 168 N.J. Super. 7, 10 (App.Div. 1979), this court viewed this "intermediate administrative *517 review" by the Commissioner of the trial judge's findings and advisory opinion as serving "no justifiable functional purpose." We noted that the process "seems inconsistent with the plenary quasi-judicial powers of judges of compensation in all other proceedings under the act." We reiterate that view and again recommend legislative attention to this problem.
This is a curiously redundant legislative scheme. There appears a legislative desire that while the ultimate decision rest with the Commissioner, he be assisted in that endeavor by the judge of compensation. The statute clearly requires that he look to the trial judge, the expert, to whom he refers the matter "to hear testimony," and whose advisory report is rendered to him. Obviously the legislative intent of this tandem scheme of review is to give the Commissioner the right to render the ultimate decision as to Fund benefits but at the same time require him to give due weight to the expertise of the judge of compensation and his opportunity to hear and see the witnesses. The Commissioner's right to review is not unlike that accorded to this court in all proceedings under the act. Paul v. Baltimore Upholstering Co., supra 66 N.J. at 119; Close v. Kordulak, supra, 44 N.J. at 958.
We therefore hold that the Commissioner is not bound by the opinion of the judge of compensation, but in light of the expertise of the judge and his opportunity to gauge directly the credibility of the witnesses, the Commissioner is required to accept and affirm the judge's finding if that finding could reasonably have been reached on sufficient credible evidence present in the whole record.
Applying that standard to a review of the matter, we conclude that the Commissioner erred in rejecting the findings and advisory report of the judge of compensation.
We are obliged to note that it is not clear what sort of record the reviewing officer used in reaching his conclusion. The decision he rendered contains "Findings of Facts" which he adopted verbatim from the "Statement of Facts" submitted in the brief filed by the Fund. Likewise, the ultimate decision of *518 this officer contains language and phrasing strikingly similar to that employed in the argument section of the Fund's brief. Nowhere in the decision does the reviewer concern himself with the facts as found by the judge of compensation or the judge's reasoning relative to the conflict in medical proofs. No reference is made to the judge's advisory report.
At oral argument the Deputy Attorney General appearing for the Fund advised that so far as he could determine the reviewing officer did not have the entire transcript of the proceedings held before the compensation judge. It appears he had "some of the medical testimony" which had been ordered transcribed during the course of the trial. We note that the statement of facts contained in the Fund's brief to the Commissioner made no reference by page and line to any transcript supplied with the brief.
In the decision-making process it is not improper for the factfinder to adopt a party's "proposed findings of fact," where his independent review of the evidence demonstrates its accuracy. Unfortunately, the independence of, and the evidential foundation for, such adopted findings are subject to question in a situation where the ultimate findings do not recite the record upon which reliance was placed and there are indications that less than all the evidence may have been consulted.
We do not, however, intend that our decision turn upon whether the reviewing officer did or did not have all of the necessary evidence. We will assume for the purposes of our ultimate conclusion that he did.
The basis for the reviewing officer's disagreement with the compensation judge is apparent in the following quotation from his decision:
... it is clear and apparent to me that [appellant] suffered from one medical condition and that is his low back pathology at the level L5-S1. All of his complaints arise from that disability and all his limitation of bodily function arises also from that area of the body. It is quite evident not only from his testimony but from the testimony of the medical experts in this case that it is impossible to separate out the disability and to find two separate and distinct disabilities. Mr. Delesky had a bad back before the final accident and the final accident aggravated, and worsened that condition to bring him to his present state of disability.
*519 It is true that all three accidents involved injury to petitioner's lower back in the area of L5-S1, that all of his complaints centered on that area and three laminectomies were performed in that same spinal space. To sum up these obvious facts, however, does not give the medical answer peculiar to this case on the issue of aggravation and ignores the medical opinion produced at trial. The medical evidence was not really in contest on the issue. The trial judge correctly noted:
The Second Injury Fund did not produce any independent medical evidence to prove the last accident aggravated his preexisting back condition. Surely, the Fund could have obtained an expert orthopedist to testify. The Court is left with a record which shows that the preexisting back condition was not aggravated but added to the accident of April 11, 1972.
The petitioner is worse but worseness is not the test of the case law.
The Fund does not, of course, bear the burden of disproving the point at issue in an application for second injury benefits. The observation made by the judge of compensation carries no such implication but merely recites the state of the proofs.
The decision of the Commissioner must be reversed because there was here ample credible evidence to sustain the judge of compensation's holding that the 1972 accident did not aggravate petitioner's preexisting disabilities. The two physicians who appeared before the trial judge voiced such opinion. The import of the testimony of Dr. Sall and Dr. Flax is that until the recent accident, petitioner functioned as a working unit with a stable back, that the last accident caused movement of an asymptomatic piece of disc material resulting in irritation of the nerve root, necessitated the final operation and resulted in added disability. Petitioner's most disabling factor is arachnoiditis. Dr. Sall opined that this condition was due to the last accident. The only opinion to the contrary was in the report of Dr. Lester Siegel. This report was admitted into evidence by agreement of the parties because of Dr. Siegel's death before trial. His report of January 26, 1977 made a reference which could be interpreted as meaning that the 1972 accident aggravated arachnoiditis which preexisted that date.
The judge of compensation treated this unexplained opinion in the following manner:

*520 Dr. Siegel was not able to explain this due to his untimely demise. The doctors who did testify did not find any permanent aggravation. I do not believe a case such as this should turn on a short conclusion in a report, which was not subject to cross-examination.
We agree that in the circumstances the trial judge was free to reject this bare conclusion. In the area of medical dispute, "the reasons for the assertion [of medical opinion] are more important than the assertion itself." Dwyer v. Ford Motor Co., 36 N.J. 487, 494 (1962). Dr. Siegel's statement, by reason of the doctor's death, was a net opinion.
We find no basis in the record for the reviewing officer's conclusion that "there is no evidence that petitioner suffered from two separate and distinct disabilities, one preexisting and one related to the April 11, 1972 accident...." There was sufficient credible evidence to the contrary.
The order of the Commissioner of Labor and Industry, Division of Worker's Compensation dated November 1, 1979 is reversed. The matter is remanded to the Commissioner for the entry of an order confirming the advisory report of the judge of compensation and providing for payment of Second Injury Fund benefits to petitioner-appellant.
NOTES
[1] Effective January 10, 1980 this subsection was eliminated from N.J.S.A. 34:15-95. L. 1979, c. 283, § 17.