FRANK LEWICKI, PETITIONER-APPELLANT, v. NEW JERSEY ART FOUNDRY, RESPONDENT-APPELLANT, AND THE SECOND INJURY FUND, RESPONDENT-RESPONDENT.

Argued September 21, 1981—Decided December 22, 1981.

*Samuel L. Marciano* argued the cause for appellant Frank Lewicki (*Florio, Dunn & Marciano*, attorneys).

*George J. Kenny* argued the cause for appellant New Jersey Art Foundry (*Connell, Foley & Geiser,* attorneys).

*Lois J. Gregory,* Deputy Attorney General, argued the cause for respondent (*James R. Zazzali,* Attorney General of New Jersey; *Michael R. Cole,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

O'HERN, J.

The primary issue in this workers' compensation appeal is the proper standard of review by the Commissioner of Labor and Industry of a Compensation Judge's advisory report recommending an award of benefits from the Second Injury Fund. This Fund is available for compensation where a worker suffers injuries in a compensable accident, which injuries together with a previous permanent partial disability from some other cause result in total and permanent disability. Since employers are liable only for the disability attributable to the worker's employment, the Fund exists to compensate the worker for the balance of his disability.

Petitioner-appellant, Frank Lewicki, has become totally disabled after an industrial accident. He began working full-time at a foundry at age 16 and, with the exception of military service, spent most of his working life as a foundry man, dealing with powders, chemicals and hot metals to forge metal products. On December 13, 1973, after 25 years of service with the New Jersey Art Foundry, he was filling a "salamander" stove with kerosene when the stove exploded, sending flames into his face. The force of the explosion threw him against the molder's bench, injuring his back and head, and burning the right side of his neck and his right forearm.

Lewicki was taken immediately to Christ Hospital in Jersey City and treated for burns to the face, neck, head and right forearm and injury to the lower back. After his discharge from Christ Hospital, he continued to experience back pain and was

admitted to St. Francis Hospital. A myelogram administered there disclosed a herniated disc which required surgical removal. After his release from the hospital, Lewicki continued to receive back treatment for approximately seven months. He filed a claim against New Jersey Art Foundry with the Division of Workers' Compensation. He also filed a verified petition seeking benefits from the Second Injury Fund pursuant to *N.J.S.A.* 34:15–94 *et seq.* The two proceedings were consolidated for trial. At the time of the hearing he had not returned to work.

In his March 16, 1979 decision, the Compensation Judge found that the petitioner was totally disabled, having suffered an aggregate of 77% of total permanent disability and 30% binaural hearing loss as a result of the accident and occupational exposure. He further found that petitioner was disabled to the extent of 10% to 15% for a hypertensive condition which he found preexisted the last compensable accident and which he determined to be the basis for Second Injury Fund compensation.

The judge's advisory report of Fund eligibility was submitted to the Commissioner on May 16, 1979. The Fund denied eligibility and filed exceptions with the Commissioner. On September 13, 1979, the Commissioner rejected the advisory report of the Compensation Judge and dismissed the application for benefits under the Second Injury Fund. The Commissioner found that there was no evidence in the record to support the judge's finding that petitioner's preexisting hypertensive condition was in fact disabling or that it was fixed, measurable and arrested, an asserted requirement for Fund liability. In addition, he found that petitioner had failed to show that his condition had not been aggravated or accelerated by his employment or that, if disabling, it was a causative factor in the overall picture of total and permanent disability.

Petitioner moved to vacate the compensation judgment and allow additional testimony in the Division of Workers' Compensation. He presumably sought to offer further evidence of the

responsibility of the employer or the Fund for the total disability. The Second Injury Fund objected that only the Appellate Division was empowered to review a decision of the Commissioner. The petitioner discontinued the motion and filed a notice of appeal with the Appellate Division.

That court concluded that the findings of the Commissioner were supported by the record. Petitioner failed to prove that the preexisting hypertension constituted a permanent disabling condition, the court stating with regard to the findings of the Judge of Compensation that "the judge's contrary conclusion lacked adequate record support."

Aware of the potential anomaly of contrary findings by the judge and Commissioner and the potential prejudice to a petitioner found to be totally disabled, the Appellate Division remanded the matter to the Compensation Division for a hearing on the applicability of the odd-lot doctrine. It appeared that the petitioner, while not totally disabled, nevertheless might be unemployable because of "handicaps personal to the worker over and above the limitations on work capacity directly produced by his accidental injury...." *Germain v. Cool-Rite Corp.*, 70 *N.J.* 1, 9 (1976). See *Barbato v. Alsan Masonry*, 64 *N.J.* 514, 534 (1974).

We granted the petition for certification, 87 *N.J.* 315 (1981), because of the contradictory Appellate Division decisions in this case and in *Delesky v. Tasty Baking Co.*, 175 *N.J.Super.* 513 (App.Div.1980). The Appellate Division in *Delesky* held that the Commissioner of Labor may not overturn a determination by a Workers' Compensation Judge if his findings are based on sufficient credible evidence in the record.

The role of the Workers' Compensation Judge in cases involving the Second Injury Fund is set forth in *N.J.S.A.* 34:15–95.1. That statute requires that a claim for Second Injury Fund benefits shall be addressed to the Commissioner, "who shall refer it to a Deputy Commissioner of Workmen's Compensation [now Judge of Compensation] to hear testimony and for an

*advisory report* as to findings.... The decision, however, as to whether the petitioner shall or shall not be admitted to the benefits shall be rendered by the said Commissioner of Labor." [Emphasis supplied]. This language is clear. The report is simply an advisory report. Thus, the statute allows the agency head to undertake a *de novo* review. This legislative pattern is similar to that in the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 *et seq.*, which provides that an agency head may adopt, reject or modify the Administrative Law Judge's findings of fact and conclusions of law. It is also similar to the pattern in *N.J.S.A.* 11:15–6 and 11:2A–1 which provide for *de novo* appeals to the Civil Service Commission. *Henry v. Rahway State Prison*, 81 *N.J.* 571, 579 (1980). This separation of the hearing and decisional functions in agency adjudications may be regarded as a "necessary expedient in the effectuation of governmental business through its administrative machinery." *Unemployed-Employed Council of N. J., Inc. v. Horn*, 85 *N.J.* 646, 655 (1981).

We do not agree with the *Delesky* court that the Commissioner is required "to accept and affirm the [compensation] judge's finding if that finding could reasonably have been reached on sufficient credible evidence present in the whole record." *Delesky, supra* at 517. The Commissioner of Labor and Industry is free to make *de novo* findings of fact and conclusions of law on the basis of the record presented. We recognize that this procedure is inconsistent with the plenary quasi-judicial powers of Judges of Compensation in all other proceedings under the act. Indeed, the Legislature has exempted Judges of Compensation from the jurisdiction of the Office of Administrative Law. *N.J.S.A.* 52:14B–2(a). The distinct procedure applicable in this case has been created by the statute in order to afford a high degree of protection for the Second Injury Fund.

The Second Injury Fund (known at times in the past as the One Percent Fund and the Two Percent Fund) is a legislatively-created fund requiring contributions from workers' com-

pensation insurance carriers and self-insured employers to absorb part of the impact upon employers of awards in certain cases involving permanent and total disability. *L.* 1923, *c.* 81, as subsequently amended (now *N.J.S.A.* 34:15–94 *et seq.*). The complete legislative history and purpose were set forth by Justice Burling in his dissent in *Ratsch v. Holderman*, 31 *N.J.* 458, 468–471 (1960). Commentators generally recite the following problem as a classic illustration of the purpose underlying this remedial legislation:

A has lost the sight of one eye in an accident. He is therefore rendered 25% disabled. He subsequently secured a job with B firm. Due to industrial accident he loses his other eye, rendering him totally blind and 100% disabled.

Since it is unfair to inflict the total burden of this loss on B, the Legislature concluded that the risk of such accidental injuries should be shared by all employers who contribute to the Fund. This policy protects employers who hire partially disabled workers from an unfair burden. It also protects the worker from being denied employment because of the potential risk of total disability. *Lawson v. Suwannee Fruit & S.S. Co.*, 336 *U.S.* 198, 69 *S.Ct.* 503, 93 *L.Ed.* 611 (1949); *Equitable Equip. Co., Inc. v. Hardy*, 558 *F.*2d 1192 (5th Cir. 1977).

While the classic example is understood, the application of the principle to complex industrial accidents or occupational conditions has not been easy.

Under *N.J.S.A.* 34:15–95, as it existed at the time of this accident, the Fund is liable when a partially permanently disabled worker becomes totally and permanently disabled as a result of a work-connected accident or occupational illness that, in combination with the preexisting physical impairment, results in permanent total disability. The worker receives compensation for the full measure of his disability and the employer is relieved of that portion of the burden unrelated to the employment. See *Belth v. Anthony Ferrante & Son, Inc.*, 47 *N.J.* 38, 49 (1966). The intent of the Fund is to "encourage the hiring by industry of people handicapped by pre-existing disabilities . . . ." *Paul v. Baltimore Upholstering Co.*, 66 *N.J.* 111, 129 (1974). The

Fund assumes liability for the portion of the disability attributable to the preexisting impairment. *Id.* at 132; see *Katz v. Tp. of Howell,* 67 *N.J.* 51, 65 (1975) (hereinafter, *Katz I*). The statute requires that both the prior disability and the later accidental or occupational condition have in conjunction causally contributed to the total permanent disability. *Balash v. Harper,* 3 *N.J.* 437, 442 (1950). Prior to 1980, Fund liability was denied when the prior partial disability was aggravated by the later incident. *Katz I, supra* at 65. Liability will be imposed on the Fund only when the statutory requirements have been fully met. *Ort v. Taylor-Wharton Co.,* 47 *N.J.* 198 (1966) (barring Fund liability when total disability results from the aggravation of a preexisting noncompensable injury by a compensable occupational disease); *Belth, supra* at 38 (disallowing Fund liability when an employment accident results only in *partial* permanent disability); *Vogel v. Red Star Express Lines,* 73 *N.J.Super.* 534 (App. Div.1962), aff'd, 40 *N.J.* 44 (1963) (disallowing liability when two successive accidents cause a back injury which initially is only partially disabling but later results in total permanent disability); *Shepley v. Johns-Manville Products Corp.,* 141 *N.J.Super.* 387 (App.Div.1976) (barring liability when the total permanent disability had a causal connection to the prior condition, and the prior condition progressively developed).

■ The standards for Fund eligibility are well established. The burden of proving eligibility is on the party seeking to impose Fund liability. *Ort, supra* at 207; *Shepley, supra* at 393. This Court has reasoned that:

> While we are, as we should be, cognizant of the general policy of the statute to encourage the hiring by industry of people handicapped by pre-existing disabilities, the Legislature has manifested concern that the Fund not be subject to undue invasion. . . . The interests here in opposition are employers and insurers, and the State Fund; not employers or insurers versus employees. [66 *N.J.* at 129]

In addition to the legislative policy that invasion of this Fund be carefully monitored by the Commissioner, we cannot ignore

the fact that since May 1, 1979 [1] three major amendments to the Second Injury Fund statute have been enacted by the Legislature. None of these removed the provision of *de novo* review. *L.* 1979, *c.* 283, effective January 10, 1980, made a comprehensive revision of the New Jersey Workers' Compensation Law and specific changes to *N.J.S.A.* 34:15–95 were included. This legislation was the subject of intense study by a committee of labor and industry and represented the cooperative efforts of business executives, labor leaders, and government representatives. A significant change was made by the deletion of subsection (b) which had sheltered the Fund from liability if permanent total disability resulted from aggravation of a preexisting disability by the last compensable injury. *Ort, supra* at 204. This modification will undoubtedly result in greater exposure of the Fund to claims against it.

The Legislature next turned its attention to the Second Injury Fund in *L.* 1980, *c.* 83, effective August 21, 1980, which raised the level of benefits paid to formerly disabled industrial workers receiving Second Injury Fund compensation. The cost to employers of this increased benefit was extensively debated. A final amendment, on May 21, 1981, changed the effective date of one section. *L.* 1981, *c.* 149. *Senate Bill* 3096, now pending, would transfer the decision making power in Second Injury Fund cases from the Commissioner of Labor to Compensation Judges. The sponsor's statement attached to the bill specifically states that

---

[1]On that date, the Appellate Division, in *Vann v. M. P. Godkin Mfg. Co.*, 168 *N.J.Super.* 7 (1979), held that the Fund itself could not appeal directly from a Compensation Judge's advisory report of Fund liability to the Appellate Division before action by the Commissioner. That court said:

> It would appear to us that the statutory requirement of intermediate administrative review of quasi-judicial determinations in the Division as to Fund liability serves no justifiable functional purpose. It seems to be inconsistent with the plenary quasi-judicial powers of judges of compensation in all other proceedings under the act. We recommend legislative attention to this problem. But so long as the statute remains in effect it commands obedience by the courts. [*Id.* at 10]

> [t]his bill has been drafted in response to a recent Appellate Division Decision, *Delesky v. Tasty Baking Company, et al.,* 175 *N.J.Super.* 513 which, among other things, questioned the review powers of the Commissioner of Labor and Industry over decisions of judges of compensation in "2nd Injury Fund" cases.

However, until the Legislature acts, we are bound by the current statutory language.

We therefore hold that the Commissioner of Labor and Industry is free to make *de novo* findings of fact and conclusions of law on the basis of the record presented to him. We must assume that the Commissioner will, as he has argued in this Court, continue to give due consideration to the findings of a Judge of Compensation.

We also affirm the judgment of the Appellate Division to remand for a hearing on the applicability of the odd-lot doctrine since the Compensation Judge did not fully consider the applicability of that doctrine.[2] The parties should have an opportunity to present further evidence on this issue. Inasmuch, then, as this case is remanded for a new administrative hearing, in the interest of justice we will remand on Second Injury Fund liability as well, to correct certain errors in the proceedings below.

We do not share the breadth of view of the Commissioner that every prior disability claimed to concur in causing total permanent disability must meet the rigorous literal formula of "fixed, measurable and arrested" to form the basis for Second Injury Fund liability. That phrase first appeared in *Brooks v. Bethlehem Steel Co.,* 66 *N.J.Super.* 135, 146 (App.Div.1961), certif. den., 36 *N.J.* 29 (1961) in which the issue was whether recovery for an occupational disease was barred by the statute of limitations when its onset was two years prior to the statutory creation of a right to recover. The opinion held that no valid

---

[2]The judicial history and exposition of this doctrine are fully set forth in *Barbato v. Alsan Masonry, supra.*

claim could arise until the condition had become definitely fixed, measurable and arrested.[3]

The phrase sought (a) to provide a standard for compensability in occupational disease cases where the identification of a condition both with respect to its nature and extent and with respect to its relationship with the employment is ordinarily difficult and (b) to provide a standard for measuring conditions that do qualify and do not qualify under *N.J.S.A.* 34:15–95.

■ The phrase was not intended as a dispositive test for qualification for the Second Injury Fund. It merely served to illustrate the nature or quality of the proofs needed to demonstrate what kind of previous condition or disability, in conjunction with a later employment disability, would be sufficient to trigger Fund liability. Thus, when a compensable injury combines with a previous condition or disability resulting in total permanent disability the Fund is liable even though the condition or disability is not static. On the other hand, if progressive physical deterioration subsequent to the compensable accident results in total permanent disability, the Fund is not liable. *N.J.S.A.* 34:15–95(c) and (d).

Two evidentiary issues remain. First, the Compensation Judge concluded that the attorney for the Fund was precluded from cross-examining the petitioner's medical experts because the employer had not objected to the admission of the petitioner's report and had failed to request cross-examination. The Judge observed that the Commissioner had promulgated a rule providing that "[i]f no request for cross-examination of a petitioner's doctor has been made by the respondent, then said doctor's report as submitted to petitioner or his attorney shall be

---

[3]The phrase later appeared in a Second Injury Fund case in *Ort, supra* at 204. It appears in a footnote in *Paul, supra,* 66 *N.J.* at 123–124 n. 2, in *Katz I, supra,* 67 *N.J.* at 64, in the later *Katz v. Tp. of Howell,* 68 *N.J.* 125, 131 n. 1 (1975) (hereinafter, *Katz II*), and in *Giagnacovo v. Beggs Bros.,* 64 *N.J.* 32, 38 (1973).

entered into evidence with cross-examination having been waived by the respondent." *N.J.A.C.* 12:235–5.62(a)(9).

We believe this is too literal a reading. The rule is written in the context of a single respondent. The procedure for handling Second Injury Fund claims is now set forth in *N.J.A.C.* 12:235–8.1 *et seq.*, which provides that after an application for Second Injury Fund benefits, the "Second Injury Fund matter shall be consolidated with the compensation case and the procedure for filing and conducting formal hearings pursuant to Subchapter 4 of this Chapter shall apply." *N.J.A.C.* 12:235–8.5. A fair reading of that rule leads to the conclusion that when a report is being offered against the Fund as a respondent, the Fund is entitled to the same protections as the employer under *N.J.A.C.* 12:235–6.62(a)(9). Obviously the rule contemplates that the parties should exchange the copies of the medical reports which evaluate the disability and determine whether they will require cross-examination before the proceeding commences, either after the pretrial hearing or after the filing of the Certificate of Readiness under *N.J.A.C.* 12:235–4.8. Thus, although the Commissioner was justified in finding that the reports should not have been considered over objection of the Attorney General,[4] the parties nonetheless, justly relied upon the reports below. Under these circumstances, it is necessary on the remand to allow the parties to present evidence regarding the prior disability.

The second evidentiary problem is the difficulty in measuring the preexisting condition of hypertension. The evidence supporting the judge's conclusion that the hypertension preexisted the explosion on December 13, 1973 included the lay testimony of the petitioner himself that he had been treated for high

---

[4]In *Katz II, supra,* at 129, we held that, absent waiver, a Fund hearing "contemplated . . . proofs in the normal manner by in-court testimony subject to cross-examination."

blood pressure, the reports of three examining physicians, and a post-dated prescription slip written by a treating physician which diagnosed hypertension on November 30, 1973, 13 days before the accidental injury, and contained the following script notation: "Diagnosis—essential hypertension, BP 180/110." The Compensation Judge, plainly moved by the apparent total disability of the petitioner, concluded that this hypertension was the only causal bridge to permanent disability. He rejected the report of the petitioner's physician, which suggested that the hypertension was related to the stresses and strains of employment and commented on the difficulty of evaluating hypertension. After ascribing about 85% of total permanent disability to various compensable causes such as his orthopedic disability, bilateral hearing loss, chronic bronchitis, psychological sequela, etc., the judge assumed that the balance of 10%–15% of the total disability was attributable to hypertension. We agree with the Appellate Division that the Compensation Judge's conclusion lacked adequate record support.

While it may be difficult to evaluate the extent of disability caused by hypertension, it is not impossible. As difficult as measurement is, some evidence must be offered. Recent medical studies attempt to measure and classify the percentage of impairment by blood pressure analysis. See 5a *Lawyers Medical Cyclopedia* § 34.58 at 309–310 (1st Ed. 1972). Quantification of the disease and its symptoms has been accomplished for Supplemental Security Income eligibility purposes. 20 *C.F.R.* part 416, subpart I, App. I, § 400 *et seq.*

Although it must be kept in mind that Compensation Judges are regarded as experts, *Kovach v. General Motors Corp.*, 151 *N.J.Super.* 546, 549 (App.Div.1978), and their findings are entitled to deference, *Goldklang v. Metropolitan Life*, 130 *N.J. Super.* 307, 309 (App.Div.1974), aff'd o. b., 66 *N.J.* 7 (1974), such findings nevertheless must be supported by articulated reasons

grounded in the evidence. "[E]ven a tribunal with expertise must predicate its ultimate determination on findings sustained by proofs to which it applies its special knowledge." *Id.* at 311.

A Second Injury Fund proceeding should follow the guidelines set forth in the *Katz* cases. Evidence must be presented to show whether the condition was preexisting and disabling, the extent of disability, and the condition's causal relationship to the total permanent disability. A conclusory statement will not suffice. The administrative fact finder must "explain his conclusions in terms of basic fact finding in the light of the evidence." *Katz I, supra,* 67 *N.J.* at 67.

It is appropriate that the claim against the Fund be retried with the claim under the odd-lot doctrine in accordance with these principles allowing the parties to present appropriate evidence upon which the judge could base his findings. This is consistent with our findings in *Ort,* where we stated:

> ... [W]e shall not attempt either to resolve the questions on this record or to express any firm view thereon. In our judgment it would be more appropriate for the Division to explore the matter against a background of the entire proceeding and with the Commissioner of Labor and Industry as an active party and participant. [*Ort, supra,* 47 *N.J.* at 206]

The Fund may attempt to prove that the total disability did not arise from the preexisting disability or that other elements of the standard for eligibility have not been met.

The judgment of the Appellate Division is affirmed in part and modified in part and the cause remanded to the Division of Workers' Compensation for further proceedings in accordance with this opinion.

*For affirmance in part and modification in part*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For reversal*—None.