**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5086-18

GALE L. PICCIONE,

    Plaintiff-Respondent,

v.

CHARLES S. PICCIONE,

    Defendant-Appellant.

_____

Submitted December 16, 2020 – Decided  February 23, 2021

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FM-21-0304-08.

William E. Mandry, attorney for appellant.

Florio Perrucci Steinhardt Cappelli Tipton & Taylor, LLC, attorneys for respondent (Donald E. Souders, Jr., of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant Charles S. Piccione appeals from a Family Part order denying his motion to terminate his permanent alimony obligation to his former spouse, plaintiff Gale L. Piccione.[1] Based on our review of the record, we are convinced the court correctly determined defendant failed to present sufficient competent evidence establishing a permanent substantial change in circumstances warranting a hearing on his application for termination of his alimony obligation. We therefore affirm.

Plaintiff and defendant married in 1976 and divorced in 2008. Their dual judgment of divorce incorporates a property settlement agreement requiring that defendant pay plaintiff permanent alimony of $2,500 per month. The agreement also provides for modification of alimony "upon [a] significant change in circumstances as same is then-defined by applicable law." At the time of the parties' divorce, defendant was employed as a lineman for Jersey Central Power & Light Company, and, under the property settlement agreement, it was "assumed that [defendant] earn[ed] or [was] presently capable of earning

---

[1] The challenged order also granted plaintiff's cross-motion to compel defendant to pay alimony arrears and for an attorney's fee award. Defendant does not argue on appeal that the court erred by granting plaintiff's cross-motion, and we therefore do not address those portions of the court's order. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (finding "[a]n issue not briefed on appeal is deemed waived"); Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (same).

A-5086-18

approximately $125,000[] per year and [plaintiff was] capable of earning $34,000[] per year."

In May 2019, defendant moved to terminate his alimony obligation.[2] He claimed his circumstances had substantially changed since the 2008 property settlement agreement established his monthly support obligation. In support of the motion, he submitted a May 1, 2019 certification and a certification of his counsel, both of which annexed multiple exhibits, including medical records and reports from defendant's medical care providers and psychologist, and correspondence from his employer's Workers' Compensation insurance carrier.

In his certification, defendant stated that on November 6, 2018, he was electrocuted and sustained injuries while performing his job duties. Defendant averred that, as a result of his injuries, he had "excruciating pain in [his] left arm" and underwent "a surgical distal tendon repair to [his] left arm" on December 14, 2018. Defendant noted he was also scheduled for a May 17, 2019 "carpal tunnel surgery on [his] left arm due to nerve damage from the electrocution." He further explained he had been going to weekly physical

---

[2] Defendant also moved for an award of counsel fees. We do not address the court's denial of defendant's motion for counsel fees because it was founded on the assumption that defendant would prevail on his motion to terminate alimony, and we affirm the court's denial of defendant's motion to terminate alimony.

therapy since the accident, had been "unable to work and ha[d] not worked since the . . . accident," and that his only source of income since the accident was a weekly $903 Workers' Compensation benefit.

Defendant asserted "[t]he time frame" for his return to work was "unclear," and that one of his doctors, Dr. Eugene Cullen, stated he is "permanently" disabled. Defendant claimed his inability to work and the concomitant reduction in his income "constitute[] a serious change in circumstances" justifying termination of his permanent alimony obligation.

Defendant also listed the names of physicians treating him for the physical injuries he claimed were caused by the accident. He further noted he was being treated by a psychiatrist, Dr. Sanjeevani Jain, for anxiety, depression, and post-traumatic stress disorder.

The exhibits annexed to defendant's and his counsel's certifications include an April 10, 2019 handwritten note from Dr. Cullen stating that "[d]ue to traumatic brain injury, [defendant] is permanently disabled and thus qualifies for a handicapped placard." Defendant also relied on a June 14, 2019 handwritten note from Dr. Cullen stating "[defendant] is permanently disabled from complications of an electrocution injury on [November 6, 2018]. His current diagnoses resulting from this injury include traumatic brain injury,

4

hepatic encephalopathy, and post[-]traumatic stress disorder." No additional medical records or documentation were provided concerning Dr. Cullen's findings.

In support of his motion, defendant also relied on medical reports from orthopedist Dr. Frank J. Corrigan that summarized defendant's injuries and treatment, stated defendant suffered a left distal biceps tendon rupture in his left arm, and explained that surgery to treat the rupture was discussed with defendant. The records reflect defendant opted to proceed with the surgical repair of the tendon. In his records, Dr. Corrigan described the physical limitations that would be imposed following the surgery, defendant's anticipated course of physical therapy, and the timing of defendant's anticipated return to full duty at work:

> [Defendant] will be unable to perform any gripping, lifting, pushing[,] or pulling with the operative upper extremity for 6-8 [weeks] following surgery.
>
> [Defendant] will be prescribed therapy, which will begin 2 weeks after surgery. The [prescription] for therapy will be for 2-3 times per week for a minimum of 6 weeks. It may be necessary to renew this [prescription] if [defendant] has not achieved adequate function after only 6 weeks.
>
> [Defendant] will be able to return to work with the above restrictions after seen for the first post-operative visit 7-10 days following surgery. Return to work full

5

duty would be estimated to be 3-4 months. [Maximum medical improvement] anticipated to be 6 months.

Dr. Corrigan performed the surgical repair of defendant's ruptured tendon on December 14, 2018. In a January 15, 2019 report, Dr. Corrigan stated he anticipated defendant's physical therapy would continue "for another 4-5 months, which is when [defendant] may be able to be released [for] full duty." Three months later, Dr. Corrigan's April 9, 2019 report indicated defendant was advised to "[c]ontinue no lifting, pushing[,] or pulling with the left arm."

Also annexed to defendant's counsel's certification was a June 6, 2019 letter from psychologist Dr. Charles J. Most, stating "that in [his] opinion, within a reasonable degree of psychological certainty," defendant "has been severely traumatized and is suffering from severe depression/anxiety and [post-traumatic stress disorder]." Dr. Most also explained defendant "is on disability and unable to work for the foreseeable future."

Plaintiff filed opposition to defendant's motion to terminate alimony, and she cross-moved to compel defendant to pay alimony arrears and for a counsel fee award. Plaintiff did not dispute that defendant had a workplace accident. She instead "question[ed] his subjective version of the event and its impact on his employability." Plaintiff challenged the accuracy of defendant's case information statement, claimed it was incomplete, and argued defendant failed

6

to fully disclose his assets and income. Plaintiff also claimed the medical reports and records upon which defendant relied did not constitute competent evidence establishing he suffered from a disability that permanently prevented him from continuing employment. Plaintiff asserted defendant did not present competent evidence establishing a substantial change in circumstances warranting a hearing on his request to terminate alimony.

In his opposition to the cross-motion, defendant relied on the exhibits submitted in support of his motion to support his claim that he suffered from various physical injuries as a result of the accident, as well as other psychological issues. Defendant noted he had undergone the tendon rupture repair and carpal tunnel surgeries, and that Dr. Cullen required that he walk with a cane due to "problems with [his] balance." Defendant reported he suffers from tinnitus and that his left thumb and top of his hand are numb. Defendant also certified he was treating with his psychiatrist, Dr. Jain, for anger issues, anxiety, and depression, but his conditions had improved because of medication Dr. Jain had prescribed.

Defendant declared he "no longer ha[d] income coming in from" his employer, he is "physically and mentally unable to work," and he has been informed by his doctors that his injuries are permanent. He also asserted the

Workers' Compensation carrier paid him $903 per week because he "was disabled." Defendant further cited and described the medical reports and records he submitted in support of his motion, claiming the information "confirm[ed his] disability and . . . inability to work."

After hearing argument on the motions, the court entered an order denying defendant's motion to terminate his permanent alimony obligation and granting plaintiff's cross-motion to compel defendant to pay alimony arrears and for counsel fees. In a written statement of reasons accompanying the order, the court found defendant failed "to prove he is permanently disabled and unable to resume work at some level."

The court rejected defendant's reliance on the doctors' reports to establish he suffered from an injury that will permanently prevent him from resuming employment. The court found Dr. Corrigan's note stating defendant is permanently disabled did not "elaborate on the basis of [his] finding, apart from listing [defendant's] diagnoses," and that the note was otherwise untethered to "documentation to support its finding."

The court also determined the letters from the Workers' Compensation carrier did not establish a permanent disability because they "classified [defendant's] condition as a 'temporary total disability,'" and that a letter from

8

defendant's insurance carrier noted defendant had not applied for "long-term disability benefits."

The court also found Dr. Corrigan's reports undermined defendant's claim that he suffered from an injury that rendered him permanently unable to resume work. The court noted the December 19, 2018 report stated defendant could not lift, push, pull, or grip with his left upper extremity only "for 6-8 weeks" following the December 14, 2018 surgery, and the January 15, 2019 report stated physical therapy was required for an additional "4-5 months, which is when [defendant] may be able to be released [to] full duty." The court explained defendant provided an April 9, 2019 progress report stating he should continue not to lift, push, or pull with his left arm, but that he had not provided more "recent progress notes to confirm whether he was able to make a full recovery as anticipated in the January 15, 2019 note."

The court also observed the June 6, 2019 letter from Dr. Most stated defendant was "severely traumatized and is suffering from severe depression/anxiety and [post-traumatic stress disorder]," but that Dr. Most's opinion was not supported by any documentation. Similarly, the court noted that, at oral argument on the motions, defendant produced a June 12, 2019 letter from psychiatrist Dr. Jain describing defendant's mental health issues, but

9

"[n]owhere in the letter does Dr. Jain opine that as a result of these ailments defendant is permanently disabled and cannot be gainfully employed."[3]

The court found it was not "appropriate to terminate defendant's alimony obligation when he submit[ted] no reliable proofs suggesting his disability is permanent." The court also found defendant failed to sustain his "burden to show a substantial and permanent change of circumstances on account of his alleged disability." The court further observed that defendant failed to "explain the source and location of" $525,541 in income shown on his 2018 tax return "to suggest such funds are unavailable to meet his alimony obligation while he remains on [W]orkers' [C]ompensation." This appeal followed entry of the court's order.

"Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion." Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006). A motion to terminate alimony must be considered based on the facts specific to each case, and we "must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Ibid. (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)); see also Cesare v. Cesare,

---

[3] The parties did not include Dr. Jain's letter in the record on appeal.

154 N.J. 394, 412-13 (1998) (explaining we accord particular deference to the Family Part due to its "expertise in family matters").

We will reverse a Family Part order only if there is "'a denial of justice' because the family court's 'conclusions are . . . "clearly mistaken" or "wide of the mark."'" Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). "This court does not accord the same deference to a trial judge's legal determinations," which are "reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

An agreement and order to pay permanent alimony is "subject to review or modification by our courts based upon a showing of changed circumstances." Glass v. Glass, 366 N.J. Super. 357, 370 (App. Div. 2004) (quoting Miller v. Miller, 160 N.J. 408, 419 (1999)); see also N.J.S.A. 2A:34-23 (providing support orders "may be revised and altered by the court from time to time as circumstances may require"). "The party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief from the support or maintenance provisions involved." Lepis v. Lepis, 83 N.J. 139, 157 (1980) (citation omitted). A permanent involuntary decrease in a supporting spouse's income typically constitutes a "changed circumstance" permitting a

modification or termination of alimony. <u>Innes v. Innes</u>, 117 N.J. 496, 504 (1990); <u>see also</u> <u>Petersen v. Petersen</u>, 85 N.J. 638, 643 (1981) (holding a change in an obligor's income typically warrants modification of alimony).

A movant must first make "[a] prima facie showing of changed circumstances . . . before a court will order discovery." <u>Landau v. Landau</u>, 461 N.J. Super. 107, 108-09 (alterations in original) (App. Div. 2019) (quoting <u>Lepis</u>, 83 N.J. at 157). Only after a movant has made this prima facie showing and engaged in discovery will the court "decide whether to hold a hearing." <u>R.K. v. F.K.</u>, 437 N.J. Super. 58, 62 (App. Div. 2014) (quoting <u>Lepis</u>, 83 N.J. at 159).

"[P]rima facie . . . [evidence is] evidence that, if unrebutted, would sustain a judgment in the proponent's favor." <u>Baures v. Lewis</u>, 167 N.J. 91, 118 (2001), <u>overruled on other grounds</u>, <u>Bisbing v. Bisbing</u>, 230 N.J. 309, 335 (2017). To determine whether there is a prima facie showing of changed circumstances, the court must consider the terms of the order at issue and compare the facts as they existed when the order was entered with the facts at the time of the motion. <u>See</u> <u>Faucett v. Vasquez</u>, 411 N.J. Super. 108, 129 (App. Div. 2009). The court must determine "whether the change in circumstance is continuing and whether the agreement or decree has made explicit provision for the change." <u>Lepis</u>, 83 N.J. at 152. "Temporary circumstances are an

12

insufficient basis for modification" or termination of an alimony obligation. Innes, 117 N.J. at 504 (citing Bonanno v. Bonanno, 4 N.J. 268, 275 (1950)).

Defendant argues the court abused its discretion by finding the submissions supporting his motion did not establish a prima facie showing of the permanent change in circumstances necessary for termination of his permanent alimony obligation. He claims the "credible medical evidence" he submitted established "that he was permanently disabled" and therefore entitled to a plenary hearing on his request to terminate alimony.

We find no abuse of discretion in the court's denial of defendant's motion. Defendant does not dispute it was his burden to present competent evidence of a permanent change in circumstances establishing a prima facie entitlement to termination of his alimony obligation. See, e.g., Palombi v. Palombi, 414 N.J. Super. 274, 291 (App. Div. 2010) (affirming denial of request for termination of alimony and for a plenary hearing in part because the supporting spouse did not provide "proof . . . to show that any change in circumstances was permanent"). He argues he satisfied that burden by presenting evidence his workplace injuries and psychological issues rendered him permanently unable to work.

The court's careful scrutiny and well-reasoned analysis of the reports, notes, and letters proffered by defendant supports its conclusion that defendant

13

failed to present competent evidence establishing the claimed permanent change in circumstances—an alleged permanent inability to work. The party moving for termination of alimony has the burden of presenting competent evidence establishing a prima facie case of changed circumstances. See R. 1:6–6; Lepis, 83 N.J. at 157-59. Defendant did not sustain that burden here.

The motion court correctly recognized Dr. Corrigan's reports describe the physical injuries defendant sustained in the workplace accident, but that Dr. Corrigan did not offer an opinion that the injuries were permanent or that they would permanently prevent defendant from returning to work. To the contrary, Dr. Corrigan's reports predict defendant's recovery from his injuries and surgeries and forecast defendant's return to full duty at work following physical therapy. The reports support a finding defendant's physical injuries temporarily prevented his return to work, but he was required to present competent proof of a permanent change in circumstances warranting termination of his alimony obligation. See Innes, 117 N.J. at 504; Lepis, 83 N.J. at 151; Palombi, 414 N.J. Super. at 291. We find no error in the court's reliance on the reports to support its conclusion defendant demonstrated only a temporary change in circumstances related to his ability to work.

A-5086-18

The court also properly rejected defendant's reliance on two cursory notes from Dr. Cullen stating only that defendant suffers from various conditions and is "permanently disabled." The opinions constitute inadmissible net opinions because they consist of "bare conclusions, unsupported by factual evidence," Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014) (quoting Buckelew v. Grossbard, 87 N.J. 512, 524 (1981)); they do not include the "why and wherefore" for the opinions expressed, ibid. (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011)); and they are untethered to any "standard [upon] which" the doctor relies or makes reference, ibid. (quoting Pomerantz Paper Corp., 207 N.J. at 373). We consider a court's determination on the inadmissibility of evidence under an abuse of discretion standard. Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 383-84 (2010). We find no abuse of discretion in the court's rejection of defendant's reliance on the inadmissible net opinions offered by Dr. Cullen.

Defendant also relies on Dr. Most's letter, but it suffers from the same infirmity as Dr. Cullen's notes. Dr. Most's letter opines that defendant will not be able to return to work "for the foreseeable future." It does not, however, include the why or wherefore for the opinion, it fails to identify the evidentiary basis for the opinion, and the opinion is not based on any articulated standard.

15

<u>Davis</u>, 219 N.J. at 410. Dr. Most's statement constitutes an inadmissible net opinion the court properly disregarded, and, even if the statement was competent evidence, it does not include a declaration that defendant is permanently unable to return to employment.

The court also rejected defendant's reliance on Dr. Jain's letter that was presented at the oral argument but is not included in the record on appeal. The court found the letter described defendant's apparent mental health issues, but that the letter did not state those issues prevented defendant from continuing his employment. Defendant does not challenge the court's findings concerning the letter's contents, and we agree with the motion court that the letter, as described, does not support defendant's request for relief. Defendant's motion was founded on an alleged permanent inability to return to work, but the record does not include any evidence Dr. Jain opined defendant is unable to work.

We also find no error in the court's determination that defendant's receipt of temporary total Workers' Compensation benefits does not require a conclusion that defendant is permanently disabled and will never be able to return to his employment. The record shows defendant received temporary benefits and that he has not applied for long-term disability benefits. The record is bereft of any finding by the Workers' Compensation court that defendant is

permanently unable to return to work and, as a matter of law, an individual need not suffer from a permanent inability to continue employment to qualify for the receipt of temporary disability benefits. Under the Workers' Compensation Act, N.J.S.A. 34:15-1 to -142, temporary disability benefits "provide an individual who suffers a work-related injury with a 'partial substitute for loss of current wages,'" Cunningham v. Atl. States Cast Iron Pipe Co., 386 N.J. Super. 423, 428 (App. Div. 2006) (quoting Ort v. Taylor-Wharton Co., 47 N.J. 198, 208 (1966)), that "continues 'until the employee is able to resume work and continue permanently threat' or until [the individual] 'is as far restored as the permanent character of the injuries will permit,' whichever happens first," id. at 427-28 (quoting Monaco v. Albert Maund, Inc., 17 N.J. Super. 425, 431 (App. Div. 1952)); see also N.J.S.A. 34:15-38 (providing that temporary disability benefits are paid from the "the day that the employee is first unable to continue at work by reason of the accident . . . up to the first working day that the employee is able to resume work and continue permanently threat").

In sum, we are convinced the court properly scrutinized defendant's submissions and concluded defendant did not present competent evidence establishing a permanent change in circumstances—a permanent inability to continue working—establishing a prima facie entitlement to the termination of

17

his permanent alimony obligation sought in his motion.[4]  To be sure, the competent evidence demonstrated defendant suffered injuries from a workplace accident that caused a temporary inability to continue his regular employment, but to establish a prima facie entitlement to the requested termination of alimony, defendant was required to present competent evidence demonstrating a permanent inability to return to work.  The court did not err by finding he failed to do so.  The court's determination does not, however, bar defendant from again seeking termination or a permanent reduction in alimony if, with the passage of time, he acquires new evidence that his disability has permanently reduced or eliminated his capacity to earn an income.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4]  Defendant did not move for a temporary modification of his alimony obligation before the motion court, and he does not argue on appeal that the court erred by failing to consider or grant a temporary modification of the award. See Sklodowsky, 417 N.J. Super. at 657.  We therefore limit our discussion to defendant's argument that the court erred by denying his motion for termination of his permanent alimony obligation.

A-5086-18